**J. R. HANSON, Appellant,**

v.

**Ottis PELHAM et al., Appellees.**

**No. 4116.**

Court of Civil Appeals of Texas.

Eastland.

March 3, 1967.

Rehearing Denied March 31, 1967.

Frank C. Ashby, Garland Casebier, Midland, Rountree, Renner & Snell, Cayton & Gresham, Lamesa, Shaw & Bowman, Rodrick L. Shaw, Lubbock, Walter Morgan, Houston, John W. Pruitt, Austin, for appellant.

Huffaker & Green, Tahoka, for appellees.

GRISSOM, Chief Justice.

J. R. Hanson sued Ottis Pelham and others in trespass to try title to the North one-half of Section 37, Block 36, Township 5 North, Certificate 2704, Abstract 176, T. & P. Ry. Co. Survey in Dawson County. In the alternative, Hanson alleged that in November 1919, H. and S. E. Bockman were the record owners of said land; that on that date they conveyed it by warranty deed to D. M. Corley and by mesné conveyances it passed to Ottis Pelham, who conveyed it by warranty deed to S. L. Forrest, reserving the minerals under the North 80 acres of the said half section but not excepting the minerals reserved by the Bockmans; that Forrest by warranty deed conveyed said land to R. C. Stuart, reserving the minerals in the South 80 acres of said half section, but not excepting said previously reserved minerals; that, in February, 1948, Stuart conveyed said land to Hanson by a warranty deed which did not contain nor mention any reservation of minerals. Hanson alleged that Bockmans' deed to Corley contained the following provision:

"It is especially understood and agreed that the said H. Bockman retains all of

the oil, gas and mineral rights on the North east quarter (N.E. ¼) of Survey 37, Block 36, Township 5 North, T. & P. Ry. Co., Surveys in Dawson County, Texas, and at any time he shall desire to develop any of the minerals above mentioned or retained herein, he can proceed with such development at his will by paying to the then owner of the land the actual damages caused by such development, if there should be cause for such damage, otherwise he shall proceed at his will to the development of said minerals."

Hanson alleged that, before January 1947, both of the Bockmans had died intestate; that the quoted provision from the Bockmans' deed to Corley reserved to the Bockmans a mere personal right which terminated upon their deaths and, therefore, no right, title or interest in the minerals in the Northeast one-fourth of Section 37 passed to the Bockmans' heirs or assigns; that, notwithstanding said reservation terminated upon the death of the Bockmans, their heirs and assigns were claiming an interest in the minerals in the Northeast one-fourth of Section 37 and Hanson was entitled to have the cloud thereby cast upon his title removed.

Hanson alleged, in the alternative, that, if the quoted provision in the Bockmans' deed to Corley did constitute a reservation of the minerals, Ottis Pelham in his deed to Forrest breached his warranty and the minerals he reserved in the Northwest one-fourth of said section should be taken by Hanson as a substitute for a like portion of the minerals which he did not own but purported to convey out of the Northeast one-fourth; that Forrest in his deed to Stuart breached his warranty as to the minerals reserved by the Bockmans and by Pelham and that the minerals reserved by him in the Northwest one-fourth of Section 37 should be taken by Hanson as a substitute for the same amount of minerals which he did not own but purported to convey under the Northeast one-fourth of said section. Hanson concluded that no minerals were

reserved by Pelham or Forrest but, if their deeds were construed to the contrary, Pelham and Forrest and their heirs and assigns were estopped to assert title to any reserved minerals in the said half section because of said breaches of warranty, wherefore, Hanson should be decreed to be the owner of the minerals they reserved in the Northwest one-fourth of Section 37. We agree that such is the result of said breaches, they being prevented by the doctrine of equitable estoppel from asserting title to the interest reserved out of the Northwest one-fourth of said section.

Hanson alleged that the Humble Oil and Refining Company claimed to own an oil and gas lease on the Northeast one-fourth of Section 37 executed by the heirs and assigns of H. and S. E. Bockman, but that the Bockmans did not reserve and, therefore, their heirs and assigns did not own the minerals in the Northeast fourth of Section 37, and their lease to Humble constituted a cloud on Hanson's title which should be removed.

In a trial to the court, it was decreed that Hanson take nothing against Humble Oil and Refining Company and the heirs and assigns of the Bockmans, but that Hanson recover from Pelham, Stuart and the heirs of Forrest $400.00, the agreed value of 80 acres of minerals which they purported to convey out of the Northeast one-fourth of said section but did not own, plus 6% interest thereon from the conveyance to Hanson in 1948. It was further decreed that Moore and Jamison take nothing against Hanson by reason of their claim that he breached his warranty. Jamison and Moore have appealed from the portion of the judgment adverse to them. That part of the judgment is affirmed. Pelham and Stuart and the heirs of Forrest have appealed from the award of interest from the date of the conveyance to Hanson. That part of the judgment is reversed and judgment rendered for said appellants. The parts of the judgment from which Hanson has appealed will hereafter be pointed out and discussed.

We shall first consider the appeal of Hanson from the judgment in favor of Humble and the heirs and assigns of the Bockmans. That portion of the judgment was the result of the court's conclusion, with which we agree, that the Bockmans retained the minerals in the Northeast one-fourth of Section 37 and that the quoted provision of their deed, executed in 1919, was not merely a reservation of a personal right which expired with the Bockmans. Notwithstanding the fact that the oil law of Texas was just beginning to develop in 1919, it is evident from said reservation that the Bockmans intended to and did reserve the minerals in the Northeast one-fourth of Section 37. As stated, Hanson says the Bockmans reserved no estate in the minerals, only a power or license of a personal nature which died with them. In support thereof he cites Pan American Petroleum Corporation v. Cain, 163 Tex. 323, 355 S.W.2d 506 and Radke and Karr v. Union Pacific Railroad Company, 138 Colo. 189, 334 P.2d 1077. Both of said cases involve a license, power or personal privilege, as distinguished from a reservation of minerals. In the Cain case the court held that the reserved right to lease the interest in the minerals conveyed was not coupled with an "interest in the minerals conveyed" and terminated upon the grantor's death. The Cain case is not decisive of the question presented here. The language used in the Bockman reservation, as a matter of law, reserved the minerals. If the Radke case is not distinguishable, it is contrary to the established law in Texas. In support of our conclusion that the Bockmans reserved the minerals we cite Donnell v. Otts, Tex.Civ. App., 230 S.W. 864, 866; Hester v. Weaver, Tex.Civ.App., 252 S.W.2d 214, 215, (writ ref.), and Joiner v. Sullivan, Tex.Civ.App., 260 S.W.2d 439. We affirm the judgment against Hanson in favor of Humble Oil and Refining Company and the Bockmans' heirs and assigns, sustaining the validity and present effectiveness of the Bockmans' reservation of the minerals in the Northeast one-fourth of Section 37.

Hanson contends that, if the Bockmans did reserve the minerals under the Northeast one-fourth of Section 37, when Pelham executed a warranty deed to Forrest purporting to convey the North one-half of said section, but reserving the minerals in the North 80 acres, Pelham breached his warranty as to the minerals he purported to convey out of the Northeast one-fourth of said section, because the Bockmans had reserved the minerals thereunder, and a like number of mineral acres which Pelham reserved out of the Northwest one-fourth of Section 37, to-wit, 40 acres, should be substituted for a like amount which he did not own but purported to convey out of the Northeast one-fourth; that when Forrest conveyed the North one-half of Section 37 to R. A. Stuart the same situation existed, except that Forrest reserved the minerals under the South 80 acres of said half section; that when Stuart conveyed the North one-half of Section 37 to Hanson his deed did not contain nor mention any reservation of minerals and that said named grantors, except as to the interests reserved, each breached his warranty and Hanson was entitled to take from Pelham and Forrest each a like amount of the minerals he reserved in the Northwest one-fourth of Section 37, they being estopped to assert ownership thereof against Hanson. We sustain this contention. The authorities cited to the contrary were written before the Duhig decision. It is ably argued that the doctrine of equitable estoppel applied here against Pelham and Forrest to assert ownership of said reserved interests may be applied only where an "undivided" interest is in controversy. Although such an interest may have been involved in the cases where our Supreme Court has applied the doctrine that court has not indicated that such was a reason for applying it. Able counsel argue that the doctrine should be applied only where the same amount of "undivided" interest is conveyed and reserved. They say that it could not be applied where parts of the conveyed and reserved lands produced oil while others were dry. We think the answer is that the doctrine is

based upon equity and it would not be applied when it was inequitable to do so. Here, it was stipulated that both at the time of the breach and at time of the trial the minerals in the different parts of the half section were all of the same value. Under this agreed situation there can be no material difference between it and an undivided interest case in applying the Duhig doctrine.

■ The court erred in holding Hanson was restricted in recovery on his warranty to the value of the minerals as to which said grantors breached their warranties, which was at the time of the breaches of the agreed value of only $5.00 per acre. Said warrantors were estopped to assert ownership of minerals they owned and reserved in said half section equal to that which they purported to convey but did not own.

The sketch at page 10 of appellant Hanson's brief, hereafter copied, shows the North half of Section 37 and tends to show the result of said warranties, breaches and reservations in Hanson's chain of title.

|||||||||||||| Blue in original form

///////// Red " " "

The Bockmans reserved all the minerals under the Northeast one-fourth of Section 37, or the east one-half of the above pictured 320 acres. The area shown in red is 80 acres of minerals out of the Northeast one-fourth as to which Pelham, Forrest and Stuart all breached their warranties because they purported to convey it, notwithstanding that it had been excepted from the conveyance of the half section by the Bockmans and was owned by their heirs and assigns. Pelham purported to convey all said half section, except the North 80 acres thereof. Pelham and Forrest each actually owned and reserved 40 acres of minerals (shown in blue) out of the Northwest one-fourth of Section 37. Hanson contends that when Forrest conveyed the North one-half of Section 37 to R. A. Stuart the same situation existed, except that Forrest reserved the South 80 acres thereof, and, when Stuart conveyed the North one-half of Section 37 to Hanson he purported to convey all the minerals thereunder and he thereby breached his warranty as to all minerals in the Northeast one-fourth of

said section, except the North 40 and South 40 acres thereof which were purported to be reserved by Pelham and Forrest, respectively. Hanson says that neither Pelham nor Forrest could breach his warranty of title to the minerals he purported to convey out of the Northeast one-fourth and in the same deed retain 40 acres of minerals out of the northwest one-fourth of said half section conveyed by the same deed; that the 40 acres of minerals reserved by each in the West end of said half section should be taken by their grantees to offset the loss of an equal amount of minerals of equal value which each purported to convey but did not own, and therefore, did not convey, out of the East end. We agree with this contention. In Miles v. Martin, 159 Tex. 336, 321 S.W.2d 62, 65, Judge Walker speaking for our Supreme Court said:

"It was held in the Duhig case that the grantor in a general warranty deed is estopped to claim title to an interest reserved therein when to permit him to do so would, in effect, breach his warranty with respect to the title and interest which the deed purports to convey."

In Benge v. Scharbauer, 152 Tex. 447, 259 S.W.2d 166, 169, in an opinion by Judge Griffin, it was held that the general warranty in a deed estopped the grantor from asserting that his deed conveyed a less interest than he owned. He said (in paragraph 5, at page 168):

"It is also well settled that where the conveyance represents that the grantor is the owner of a particular interest in property and such interest is conveyed by the deed, the grantor is estopped by his covenant of general warranty to claim that the deed conveyed a less estate than grantor's ownership. Duhig v. Peavy-Moore Lumber Co., Inc., 135 Tex. 503, 144 S.W.2d 878."

and further (in paragraph 9 at page 169):

"The rule of the Duhig case, in order to remedy the breach of warranty, takes from the grantors part of what the deed purported to reserve to them * * *."

It was there held that a one-fourth mineral interest required to remedy the breach of warranty and to convey the interest purported to be conveyed would be taken from what the grantors reserved.

In Duhig v. Peavy-Moore Lumber Co., Inc., 135 Tex. 503, 144 S.W.2d 878, our Supreme Court adopted Judge Smedley's opinion which laid down the rule that a grantor to whom realty has been conveyed with a reservation of a one-half interest in the minerals, who in his deed retains one-half the minerals, is estopped by his warranty from claiming the one-half interest which in the same deed he reserved to himself. So, it has been established in Texas that when a grantor purports to convey by warranty deed an interest in land that he does not own and in the same deed retains a like interest he is estopped to assert ownership of the like interest which he reserved. Hanson says the court erred in holding to the contrary and not awarding him the North 40 and South 40 acres of minerals out of the West half of the pictured half section reserved, respectively, by Pelham and Forrest. We sustain Hanson's said contention. Said part of the judgment is reversed and judgment is rendered awarding Hanson title to said 80 acres of minerals out of the West half of said half section. See also McMahon v. Christmann, 157 Tex. 403, 303 S.W.2d 341, 346 and Gibson v. Turner, 156 Tex. 289, 294 S.W.2d 781, 786.

The court awarded Hanson 6% interest on his money judgment for breaches of warranty, to-wit, $400.00, from the date of the conveyance to him, February 9, 1948, to the date of the judgment. Pelham, Forrest and Stuart say the court erred in awarding him such interest because there was no proof Hanson was disturbed in his possession or use thereof and the burden was upon him to show he was evicted and received no profits from the minerals as to which the title was breached. We think

they are correct. Hanson did not prove such things. On the contrary, the record shows Hanson leased the North half of Section 37, including the two 40 acre tracts for which he recovered $400.00 damages, excepting only the North and South 80 acres, for a valuable consideration. Under the circumstances, it was error to allow interest from said date. Brown v. Hearon, 66 Tex. 63, 17 S.W. 395; First National Bank v. Brown, Tex.Com.App., 15 S.W.2d 563.

■ C. R. Jamison and J. Hiram Moore were parties to this suit. Hanson alleged that "By reason of the purported reservation as hereinbefore set out in the Bockman to Corley deed, the defendants, C. R. Jamison and J. Hiram Moore, are asserting a claim against the plaintiff for breach of warranty as to that portion of said lease covering the Northeast one-fourth—of said section. Plaintiff says that such claims should be denied and said defendants take nothing of him." Jamison and Moore answered by a general denial. They did not seek affirmative relief against Hanson and offered no evidence of such a claim against Hanson. It was decreed that they take nothing against Hanson by reason of their claim for breach of warranty. After Hanson obtained a deed to the North half of Section 37, he executed an oil and gas lease thereon to Jamison and Jamison conveyed a one-half interest to J. Hiram Moore. The judgment awarded no affirmative relief to Hanson against Jamison and Moore. It simply decreed that they recover nothing against Hanson by reason of their claim of breach of warranty. After it was decided that the Bockmans had reserved said minerals and that judgment was rendered they, untimely, sought to reopen the case and assert a cause of action for breach of warranty in said lease by Hanson to Jamison, apparently because of the decision that the quoted provision of the Bockmans' deed was a reservation of minerals and still in effect. Jamison and Moore were parties to the suit. Hanson alleged that by reason of the Bockman reservation and his lease to them Jamison and Moore were asserting a claim against him for breach of warranty in said lease, but their claims should be denied and judgment rendered that they recover nothing against him. Jamison and Moore say that theirs was not a compulsory counter claim and they had a right to reopen the case after judgment had been rendered sustaining the Bockman reservation and decreeing that they take nothing against Hanson by reason of their claim for breach of warranty and, on another hearing, recover damages from Hanson for breach of the warranty in his lease. The only pleadings filed by Jamison and Moore was a general denial. They did not seek affirmative relief against Hanson. They offered no evidence to support their claim for breach of warranty, which was put in issue by the pleadings. We affirm that part of the judgment refusing to reopen the case and then try their asserted cause of action for breach of warranty against Hanson. We think their cause of action was not timely presented and that they should not be permitted to sit back and gamble on the outcome of the case to which they were parties, hoping that it would be held that the Bockmans did not reserve the minerals. We think that, under the circumstances, theirs was a compulsory counter claim within Texas Rules of Civil Procedure 97. Hanson's claim was asserted and determined on the trial. The judgment as to Jamison and Moore is affirmed. Thomson v. Philips, Tex.Civ.App., 347 S.W.2d 832, (ref. n. r. e.); Lacy v. Carson Manor Hotel, Inc., 297 S.W.2d 367, (ref. n. r. e.).

That part of the judgment refusing to award the two 40 acre tracts out of the Southwest one-fourth of Section 37, shown in blue, to Hanson and awarding him only the value of the two 40 acre tracts shown in red is reversed and he is awarded the minerals in the two tracts shown in blue. But, Hanson cannot take the two 40 acre tracts, shown in blue, reserved by Pelham and Forrest, respectively, as a substitute for the two 40 acre tracts shown in red and

at the same time recover the value of the two 40 acre tracts shown in red. It should be here noted that it was stipulated that, when Hanson bought from Stuart, Hanson knew of the reservations by Pelham and Forrest, respectively, of 80 acres off the North and South ends of said half section. Hanson's judgment for $400.00 and interest thereon from 1948 is reversed and judgment is rendered awarding Hanson the two forty acre tracts shown in blue out of the Southwest one-fourth of Section 37, which were reserved by Pelham and Forrest out of the West end of said half section. Our conclusion that Hanson is entitled to said 80 acres of minerals out of the Northwest one-fourth of Section 37 prevents his recovery also of the value of a like interest out of the Northeast one-fourth, to-wit, $400.00 and is, of course, another and independently sufficient reason for denying Hanson a recovery of interest thereon. In all other respects the judgment is affirmed.

The judgment is reversed and rendered in part and in part affirmed.