**Myrtle R. FORREST et al., Petitioners,**

v.

**J. R. HANSON et al., Respondents.**

No. B–260.

Supreme Court of Texas.

March 6, 1968.

Rehearing Denied April 3, 1968.

Roundtree, Renner & Snell, Ray Renner, Lamesa, Garland Casebier, Frank C. Ashby, Midland, Cayton & Gresham, William E. Fulbright, Lamesa, for petitioners.

Huffaker & Green, Harold Green, Tahoka, Shaw & Bowman, Rodrick L. Shaw, Lubbock, Dillard Baker and Walter B. Morgan, Houston, for respondents.

GRIFFIN, Justice.

This is a trespass to try title suit brought by respondent, J. R. Hanson, against various defendants, petitioners herein, with alternative pleadings against specific defendants, now petitioners, for construction of a deed with a mineral reservation for breach of warranty, estoppel to assert title, damages, and other incidental relief. The cause was tried before the court without a jury, and judgment was rendered by the trial judge against the petitioners for part of the relief prayed for and against various named defendants for certain relief. Hanson and certain of the defendants gave notice of appeal from the judgment, and the Court of Civil Appeals reversed and ren-

dered in part; affirmed in part. 413 S.W. 2d 394. Hanson filed an application for writ of error, and other applications were filed by two groups of defendants. All applications were granted.

In his pleadings on which Hanson went to trial, he separated the defendants into eight different groups designated A through H. Some of the groups had common interests and filed their applications for writ of error according to their common interests. We adopt Hanson's classification and will dispose of this cause as to the claims of Hanson against such groups and their counterclaims, if any.

Defendants F (Humble Oil & Refining Company) and G (the heirs and assigns of Bockman), are respondents herein. A short history is necessary in order to understand the case. In 1919 H. Bockman and wife, S. E. Bockman, owned in fee simple the title to all of the north one-half (N/2) of Section 37, Block 36, Township 5 North, T & P Ry. Co. Survey in Dawson County, Texas. On November 21, 1919, the Bockmans conveyed this tract of land by warranty deed to D. M. Corley, which contained the language giving rise to this litigation, to-wit:

"It is especially understood and agreed that the said H. Bockman retains all of the Oil, Gas and Mineral rights on the Northeast Quarter (NE/4) of Survey 37, Block 36, Township 5 North, T & P Ry. Co. Surveys in Dawson County, Texas, and at any time he shall desire to develop any of the minerals above mentioned or retained herein, he can proceed with such development at his will by paying to the then owner of the land the actual damages caused by such development, if there should be cause for such damage, otherwise, he shall proceed at his will to the development of said minerals."

Due to error of an abstractor this paragraph of the deed was not included in the abstract of title. It was this unfortunate mistake that has caused this suit.

By mesne conveyances from Corley, Pelham became the owner of the land, and no reservation was contained in his deed from the Corleys.

In this opinion we will refer to the reservation "of oil, gas and other minerals" as "minerals" for brevity.

On July 13, 1943, Pelham, by warranty deed, conveyed the north half (N/2) of Section 37 to S. L. Forrest and reserved to himself, his heirs and assigns all the minerals in, on, and under the north 80 acres of this half section. No mention was made of the Bockman reservation.

On March 17, 1947, S. L. Forrest, by warranty deed, conveyed this half section of land to R. A. Stuart, reserving unto himself, his heirs and assigns, all minerals in, on and under the south 80 acres of the half section. This deed made no mention of the Bockman mineral reservation or of the Pelham mineral reservation.

On February 9, 1948, R. A. Stuart conveyed this half section by warranty deed to J. R. Hanson, and this deed contained no reference to or mention of any of the prior reservations. However, upon the trial of the case it was stipulated that J. R. Hanson understood that the said Pelham and Forrest had previously reserved the minerals as hereinbefore set out, and that the warranty to the said J. R. Hanson was to cover only 160 acres of minerals. This 160 acres was in the middle 160 acres of said half section, 80 acres of the NE/4 and 80 acres of the NW/4. Hanson's title to the middle 80 acres of the NW/4 has not failed, and it is not in this suit. The stipulation above set out prevented Hanson's recovery for breach of warranty to the north 80 acres and the south 80 acres of the N/2. Upon trial it was stipulated that defendant F, Humble Oil & Refining Company, was the owner and holder of an oil, gas and mineral leasehold under the northeast quarter (NE/4) of said section, if the Bockman mineral reservation in the Bockman deed in 1919 is now a valid and subsisting one. Humble held its lease from

the heirs of H. Bockman and wife and their assigns. The sketch below shows the various mineral reservations out of the north half (N/2) after Hanson took his deed.

N/2 Section 37, etc.
(Not drawn to scale)

Hanson contends here, as he did in the courts below, that the above quoted reservation in the Bockman deed confers, at the most, a right on the part of Bockman during his lifetime to go upon the NE/4 of said section for the purpose of developing the minerals, and that such right, if any, terminated upon the death of H. Bockman and did not inure to the benefit of his heirs, executors or assigns. Both courts below have rejected this contention. We agree with the holdings of both courts below that the reservation contained in the Bockman deed to Corley in 1919 was a reservation to Bockman, his heirs and assigns of all of the oil, gas, and other minerals in, on, and under, or that may be produced from said NE/4. Humble is lessee under the Bockman title and is the owner of a valid and subsisting lease on the NE/4.

The Court of Civil Appeals has clearly and adequately discussed and decided this point, and we see nothing to be gained by our writing further thereon.

*Rights of the heirs of S. L. Forrest named and designated in plaintiff's original petition as Defendants B; of Pelham, Defendant A; and of Stuart, Defendant C:*

Pelham's deed to Forrest conveying the N/2 of Section 37 was a warranty deed purporting to convey all title, except Pelham reserved all of the minerals in the north 80 acres of said half section. Pelham owned no minerals in the NE/4 of the section; therefore, his warranty was breached as to all the minerals under the south 120 acres of the NE/4. Forrest's warranty deed conveying this north half section to Stuart purported to convey all title, reserving only the minerals under the south 80 acres of the half section. Forrest owned no minerals in the NE/4 nor in the north 40 acres of the NW/4. Therefore, his warranty was breached as to all of the minerals under the NE/4 except as to the

south 40 acres he reserved and also was breached as to the minerals under the north 40 acres of the NW/4. Stuart's warranty deed conveying to Hanson the north half of Section 37 purported to convey all of the title thereto and with no reservation of any minerals. Therefore, by virtue of the stipulation above set out, Hanson could recover on Stuart's warranty only for the breach as to all minerals under the middle 80 acres of the NE/4. Stuart owned title only to the minerals under the middle 80 acres of the NW/4. Previous to the filing of this suit Pelham had conveyed all his mineral interest in the north 80 acres of the N/2 of the section to L. F. Jamison, who in turn had conveyed an undivided one-fourth (¼) interest therein to J. Hiram Moore.

Hanson sought recovery in his trespass to try title suit for all the minerals under the north half section. In the alternative, should Bockman's reservation be held good, Hanson, as a remote grantee under Pelham's and Forrest's deeds and as the grantee under Stuart's deed, sought recovery from Pelham, Forrest and Stuart for the value of the middle 80 acres mineral interest in the NE/4. This value was stipulated to be $5.00 per acre.

To Hanson's original petition Forrest and Stuart each filed an answer in which each pleaded "not guilty" and a general denial. Pelham's answer pleaded only a general denial. By virtue of the stipulation, the warranty in favor of Hanson was to cover only the minerals under the middle 80 acres of the NE/4 and the middle 80 acres of the NW/4.

The trial court gave Hanson recovery against Pelham, the heirs of Forrest, and Stuart for $400.00, plus interest from the date of his deed to date of judgment. This recovery was for the breach of warranty only as to the middle 80 acres of the NE/4. Hanson was denied any recovery of minerals in the north 40 acres and the south 40 acres in the NW/4. On appeal the Court of Civil Appeals sustained Hanson's contention that the minerals under each of

these 40-acre tracts in the NW/4 should be substituted for the middle 80 acres in the NE/4, as to which such 80 acres a breach of warranty resulted in the Pelham, Forrest, and Stuart deeds. The Court of Civil Appeals held this result was required under the holding of this Court in the case of Duhig v. Peavy-Moore Lumber Co., Inc., 135 Tex. 503, 144 S.W.2d 878 (1940).

Having awarded Hanson these two 40-acre tracts out of the NW/4 to satisfy the breach of warranty of title to the middle 80 acres of the NE/4, the Court of Civil Appeals reversed the trial court's judgment awarding Hanson $400.00 for the value of the minerals under the middle 80 acres of the NE/4, together with interest from the date of the conveyance to him by Stuart of the N/2 of Section 37, to-wit, February 9, 1948, to date of judgment.

In his application for writ of error, in addition to assigning error to the judgment of the Court of Civil Appeals affirming the trial court's judgment recognizing Bockman's reservation as good, Hanson complains of the holding of the Court of Civil Appeals that he was not entitled to interest on his judgment for $400.00 from the date of Stuart's deed to him. Hanson also has a point of error complaining of the Court of Civil Appeals holding that he must be evicted and disturbed in his possession of the minerals, title to which failed, before he can recover damages for the breach of warranty, and therefore, interest can only be recovered from such date of eviction or interference with his possession.

We find no application for writ of error filed by Pelham or Stuart, nor did they join in any application filed by other parties. Stuart joins with the Forrest heirs in their reply to Hanson's application wherein he complains of the Court of Civil Appeals' holding regarding the necessity that Hanson be evicted and his possession disturbed to the mineral interests as to which Hanson claims a breach of warranty; and also to Hanson's complaint about the date from which interest will be allowed.

The Forrest heirs filed an application for writ of error, complaining of the holding of the Court of Civil Appeals whereby it decreed Hanson should recover the minerals under the south 40 acres of the NW/4 of Section 37. These mineral interests in this 40 acres were awarded to Hanson to make good the breach of warranty as to a 40-acre mineral interest out of the middle 80 acres of the NE/4, and which interest has been severed and reserved by Bockman.

We sustain the Forrest heirs' assignment of error, complaining of the award to Hanson of the minerals under the south 40 acres of the NW/4.

When Forrest conveyed the N/2 of Section 37 to Stuart and reserved all of the minerals in and under the south 80 acres thereof, his warranty was immediately breached as to the minerals in and under the north 120 acres of the NE/4. These minerals having been previously severed, and Forrest owning no interest in the minerals under the NE/4, he owned no minerals under this NE/4 out of which his warranty could be fulfilled.

In Duhig v. Peavy-Moore Lumber Co., Inc., 135 Tex. 503, 144 S.W.2d 878 (1940) the deed conveying the Josiah Jordan Survey of 574⅜ acres to W. J. Duhig reserved an undivided one-half of the minerals under the survey. Later Duhig conveyed the same survey to the predecessors in title of Peavy-Moore Lumber Company, and in this deed no mention was made of the prior reservation of one-half of the minerals. Duhig's deed purported to reserve an undivided one-half of the minerals in the Jordan Survey, and it purported to convey to the grantee the other half interest in the minerals, which interest had been reserved by Duhig's grantor. In that case this Court said:

"* * * When the deed is so interpreted the warranty is breached at the very time of the execution and delivery of the deed, for the deed warrants the title to the surface estate and also to an undivided one-half interest in the minerals. The result is that the grantor has breached his warranty, but that he has and holds in virtue of the deed containing the warranty the very interest, one-half of the minerals, required to remedy the breach. * * *"

"* * * The decision here made assumes, as has been stated, that Duhig by the deed reserved for himself a one-half interest in the minerals. The covenant is not construed as affecting or impairing the title so reserved. It operates as an estoppel denying to the grantor and those claiming under him the right to set up such title against the grantee and those who claim under it."

The Duhig doctrine is a doctrine of estoppel and not one of replacement. The Duhig case applied the estoppel principle of the after-acquired title cases. The only difference is that in such cases the title was acquired after the conveyance rather than as in Duhig the title was reserved in Duhig's instrument of conveyance. This Court in Clark v. Gauntt, 138 Tex. 558, 161 S.W.2d 270, 272 (1942), said:

"The estoppel in the after-acquired title cases arises from the assertion of ownership made by the grantor in the covenant of warranty, express or implied, or in other recitals in the deed. Such assertion is a representation that the grantor owns the land or the estate or interest to which it relates, and having thus represented the fact of ownership, the grantor is estopped to deny that fact."

Thus, if a party attempts to claim an interest which he purported to convey, he is in effect denying a fact represented by his conveyance and either the Duhig doctrine or the doctrine of after-acquired title would work an estoppel. In the case at bar neither Pelham (nor his vendees, Jamison and Moore), Forrest, nor Stuart owned any interest in the minerals under the NE/4, although their deeds purported to convey certain mineral interests therein; therefore, there were no mineral interests in the NE/4 belonging to either of these grantors to

which the doctrine of estoppel could apply and remedy their breach of warranty as to minerals in and under the NE/4. Miles v. Martin, 159 Tex. 336, 321 S.W.2d 62, 65 (1959); Gibson v. Turner, 156 Tex. 289, 294 S.W.2d 781, 786 (1956); Benge v. Scharbauer, 152 Tex. 447, 259 S.W.2d 166, 168 (1953).

Pelham, Forrest, and Stuart would only be liable for money damages for breach of their warranty as to any mineral interest in the NE/4 which their deed purported to convey but which they did not own, i. e., the middle 80 acres of the NE/4. Under the facts of this case Hanson is relegated to his claim for money compensation for the breach of warranty because of title failure. Wilbarger County v. Robinson et al. (1893), 5 Tex.Civ.App. 10, 23 S.W. 823, no writ history; Daniel v. Allen (Tex.Civ.App., 1939), 129 S.W.2d 392, no writ history.

■ The trial court correctly recognized the stipulation of the parties that $5.00 per mineral acre was the value of these minerals at the time the deeds in question were executed. The trial court gave Hanson interest on the $400.00 award for the middle 80 acres of the NE/4 from the date of the deed to him to the time of trial at 6% per annum. The Court of Civil Appeals reversed the judgment of the trial court as to the $400.00 plus interest and rendered judgment denying Hanson any recovery of damages or interest against Forrest's heirs, Pelham, and Stuart. This judgment of the Court of Civil Appeals denying Hanson interest is correct.

"Interest for the time prior to the eviction during which the warrantee was in possession of the land and enjoying it without any liability to the owner for the rent thereof should not be allowed. And it has been held that the proper measure of damages where the premises are occupied and no mesne profits are demanded or recoverable by the owner is the amount paid for the land. The reason for the rule appears to be that it is not equitable to allow interest on the agreed value of the land if the use thereof was

had without liability to any person, the use of the land being equivalent to interest." 15 Tex.Jur.2d, Section 87, Interest, page 707.

See also Brown v. Hearon, 66 Tex. 63, 17 S.W. 395 (1886).

The defendants, D (L. F. Jamison); E (J. Hiram Moore); and H (C. R. Jamison) have an application for writ of error complaining of the holding of the Court of Civil Appeals that Hanson was entitled to recover the minerals under the north 40 acres and the south 40 acres of the NW/4 to make good his breach of warranty as to the title to the minerals under the middle 80 acres of the NE/4.

■ Hanson filed a motion to dismiss L. F. Jamison's application for writ of error filed in this Court because L. F. Jamison filed no motion for rehearing in the Court of Civil Appeals complaining of the Court of Civil Appeals judgment against him, as is required by Rules 458 and 469(c), Vernon's Texas Rules Annotated. We have carefully examined the record in this case and we fail to find that L. F. Jamison filed a motion for rehearing in the Court of Civil Appeals. We therefore have no jurisdiction to consider the application for writ of error filed by L. F. Jamison. Wallace v. Scrogum, Tex.Sup., 372 S.W.2d 941 (1963). The Court of Civil Appeals judgment disposing of his rights and claims is final.

For the reasons given above in reversing upon the complaint of the Forrest heirs that part of the Court of Civil Appeals judgment as to the minerals in the south 40 acres of the NW/4, we here reverse the judgment of the Court of Civil Appeals divesting these defendants, Moore and C. R. Jamison, of their title to the minerals under the north 40 acres of the NW/4 and vesting title in Hanson. Title to the interests in the minerals owned by defendants C. R. Jamison and J. Hiram Moore under the two 40-acre tracts of land is hereby vested in those defendants.

■ The defendants E and H also complain (1) of the holding of the Court of

Civil Appeals affirming the judgment of the trial court refusing to allow these defendants to re-open the case and then try their asserted cause of action for breach of warranty against Hanson; and (2) in denying these defendants any recovery against Hanson by reason of any asserted claim for breach of warranty.

The background of the court's ruling is as follows: Plaintiff Hanson in his original petition alleged that in June, 1965, defendant Pelham gave a mineral deed to defendant L. F. Jamison, purporting to convey all the minerals under the west half of the north 80 acres of Section 37 (NW/4), and later L. F. Jamison purported to convey an undivided one-fourth (¼) interest in said minerals to J. Hiram Moore; that these conveyances constitute a cloud on Hanson's title to such minerals, and he asks that said cloud be removed and said deeds cancelled and expunged.

Hanson also alleged that Moore was claiming to be the owner of an oil and gas lease from the Forrest heirs to the oil and gas under the south 80 acres of the N/2 of Section 37. He alleged this lease constituted a cloud on his title to such minerals and prayed this cloud be removed and the oil and gas lease and its assignment to Moore be cancelled and expunged from the deed records.

Hanson further alleged that in 1962 he and his wife gave an oil and gas lease to C. R. Jamison, Defendant H, covering all of the oil and gas under the N/2 of Section 37, save and except the north 80 acres and the south 80 acres thereof; that C. R. Jamison had assigned this lease to J. Hiram Moore. This lease purported to convey minerals in and under the middle 160 acres of said N/2. Hanson further alleged that by virtue of the Bockman reservation on the NE/4, C. R. Jamison and J. Hiram Moore were asserting a claim against him on his breach of warranty to the middle 80 acres in the NE/4. Hanson asked that this claim against him be denied and that C. R. Jamison and J. Hiram Moore take nothing

against him on said warranty, and that he have judgment against defendants, declaring he was the owner of all of said minerals and that he did not in truth and fact breach said warranty. He alleged that their remedy for breach of warranty, if any, was for recovery of a money judgment against Pelham, Forrest and Stuart.

To Hanson's pleadings the defendants, Moore, Pelham and the two Jamisons, filed a joint answer containing only a general denial and a prayer that they "go hence without day and with their costs." The judgment of the trial court recites that these defendants asked no affirmative relief and upon the trial offered no evidence upon the nature and amount of any claim they might have against Hanson. The judgment further recites that after the trial and after the trial judge had announced his ruling on the claims of the various parties, but prior to the actual entry of the judgment, these defendants, C. R. Jamison, J. Hiram Moore and L. F. Jamison, filed a motion to re-open the case and that they be given permission to file an amended answer and cross-action seeking affirmative relief against Hanson. This motion, after a hearing thereon, was denied by the trial court. In the judgment it was recited that these defendants take nothing against Hanson by reason of any asserted claim for breach of warranty. The Court of Civil Appeals affirmed the trial court's take-nothing judgment against the two Jamisons and Moore. One of the grounds for affirmance was that the relief sought by these defendants was a compulsory counterclaim which should have been alleged and proven in the trial.

As to the defendants, C. R. Jamison and J. Hiram Moore, designated as Defendants H and E, respectively, and their contentions that they should have been permitted to re-open the case and file pleadings seeking affirmative relief against Hanson, we agree with the Court of Civil Appeals in its judgment affirming the action of the trial court refusing to permit these two defendants to re-open the case.

The trial court did not abuse its discretion in refusing C. R. Jamison and Moore permission to re-open the case and plead a cause of action against Hanson after the trial judge had tried the case and announced the judgment he rendered.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is modified by eliminating the recovery by Hanson of 6% interest from Defendants A (Pelham), B (Forrest heirs), and C (Stuart) on the sum of $400.00 from February 9, 1948, to date of the judgment, and as thus modified the trial court's judgment is affirmed.

Hanson is adjudged to pay three-fourths of the court costs, and C. R. Jamison, J. Hiram Moore, and the Forrest heirs shall jointly be liable for one-fourth of the court costs.