

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-09-00299-CV

XTO ENERGY INC., TOMMY J.
MADEWELL, PATRICIA
MADEWELL, VIOLET JOYCE
RENFRO KIVIMAKI, GARY W.
YOUNT, SHIRLEY K. STEPHENS,
GREGORY DOYLE MOSELEY,
SHARLET YVONNE HOLAMON,
VIOLA D'ANN MADEWELL, NASA
ENERGY CORPORATION, EDITH
MADEWELL MCCURRIN, TOMMY
ROESSLER, DEBBIE MADEWELL,
THE UNKNOWN HEIRS OF
ARTHUR FRED MADEWELL,
THE UNKNOWN HEIRS OF GENE
ROESSLER, THE UNKNOWN
HEIRS OF W.R. MADEWELL,
MATILDA JONES MADEWELL,
AND PAULA SIMON MADEWELL

APPELLANTS

V.

LEONARD NIKOLAI AND SANDY
NIKOLAI

APPELLEES

**AND**

LEONARD NIKOLAI AND SANDY NIKOLAI                                    APPELLANTS

V.

XTO ENERGY INC., TOMMY J. MADEWELL, PATRICIA MADEWELL, VIOLET JOYCE RENFRO KIVIMAKI, GARY W. YOUNT, SHIRLEY K. STEPHENS, GREGORY DOYLE MOSELEY, SHARLET YVONNE HOLAMON, VIOLA D'ANN MADEWELL, NASA ENERGY CORPORATION, EDITH MADEWELL MCCURRIN, TOMMY ROESSLER, DEBBIE MADEWELL, THE UNKNOWN HEIRS OF ARTHUR FRED MADEWELL, THE UNKNOWN HEIRS OF GENE ROESSLER, THE UNKNOWN HEIRS OF W.R. MADEWELL, MATILDA JONES MADEWELL, PAULA SIMON MADEWELL, WINNIFRED M. IMBODEN, ESTATE OF OUILDA MARIE MADEWELL BAIRD (DECEASED), WILSON OIL & GAS COMPANY, SHERON LANELLE MITCHELL, MATTHEW KIRK MILLER, PATRICIA SUE MCNEW FINCH, DEBRA KAY MYRICK, WILLIAM JAY MCNEW, WANDA ANN TUBBS, BEVERLY ANN MCNEW THOMPSON, PETE MITCHELL, GLENNES GEROME LANGFORD, WILLIAM DON MADEWELL, NORMAN EDGAR MCNEW, AND BEVERLY E. MCNEW SMITHIE                                    APPELLEES

2

----------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

----------

**OPINION**

----------

In three issues, the appellants that are listed above, other than Leonard and Sandy Nikolai, argue that the trial court erred by denying their motions for summary judgment and by granting the Nikolais' motion for summary judgment.[1] The Nikolais contend that the trial court's summary judgment decision on the merits of their title and declaratory judgment claims was proper, but they argue in three issues that the trial court erred by not granting summary judgment on additional grounds, by making erroneous rulings on their objections to XTO's summary judgment evidence, and by failing to award attorney's fees. We affirm in part, reverse and render in part, and reverse and remand in part.

**Background Facts**

In 1882, Albert Shields ostensibly conveyed the following land to William Pippin through a deed (the "Shields Deed"):

---

[1] All of the appellants, except the Nikolais, have adopted or restated the arguments made by XTO Energy Inc. (XTO). *See* Tex. R. App. P. 9.7. Where appropriate, to increase the readability of this opinion, we will use "appellants" and "XTO" interchangeably to refer to the parties whose positions are adverse to the Nikolais' positions.

92½ acres of land situated in the County of Denton and 8 miles South of the city of Denton and being a part of the J.L. Rose 160 acre survey[2] beginning at a pile of Rock in the south B line of 160 acre survey made for Richard Knight dec'd 450 varas[3] East from his S.W. corner, from which a Post Oak brs North 38° W. 4½ varas[.] Thence west passing said Knight's S.W. corner 1418 varas to a stake in the . . . East B. line of a 320 acre survey made for William Gibson from which Post oak brs North 42° W. 20 varas. Post oak bears South 55° W. 8½ varas on the said line 637 varas to a Post oak blazed on four sides, from which a Post oak bears North 41½° East 6 varas Post Oak bears S. 72° E. 6½ varas. Thence East 1418 varas, a stake from which a post oak brs S 32° East 14 var[a]s a Post oak brs north 20° E. 5¼[.] Thence North 637 varas to the place of beginning, to contain 92½ acres of the East end of said 160 acre survey.

In 1904, W.R. and Matilda Madewell signed a deed (the "Madewell Deed") that purported to convey land that was adjacent to the property subject to the Shields Deed. The Madewell Deed described the land that the Madewells attempted to convey to J.L. Goff as

all that certain lot track or parcel of land in Denton County Texas, and being all that part of the JL Rose 160 acre preemption survey lying west of 92½ acres off the East part of said survey deeded to Wm Pippin by Albert Shields on Nov 28th 1882, the part here conveyed being 67½ acres more or less of land off the west part of said Rose survey.[4] *It being expressly understood that grantors reserve any and all minerals that may be in said land as well as the right to mine same*, said grantors being responsible to grantees for

---

[2]The J.L. Rose survey was prepared in the 1850s, and it was patented in 1862.

[3]In Texas, one vara is equal to 33.33 inches. *City of Carrollton v. Duncan*, 742 S.W.2d 70, 71 n.1 (Tex. App.—Fort Worth 1987, no writ).

[4]Thus, it is clear that the Shields Deed and the Madewell Deed intended to convey different parts of the 160 acres of land described by the J.L. Rose survey.

4

any damage done to said lands by reason of mining on same. [Emphasis added.]

In 1922, Lon and Pearla Speer conveyed the same 67½ acre tract to E.M. Madewell (through the "Speer Deed").[5]  The Speer Deed recited, "It is thoroughly understood that the Mineral Rights upon this tract of land are not transferred by this instrument, same having been retained by W.R. Madewell in deed to J.L. Goff said deed dated Oct. 5 1904, recorded in . . . Deed Records of Denton County, Texas."  In 1953, E.M. and Essie Madewell conveyed the same land to W.V. and Elizabeth Pippin.  In 1971, the Pippins deeded the land to James Brockie (through the "Pippin Deed").  In its description of the property that was being transferred, the Pippin Deed expressly relied on the Speer Deed, which the Speers had executed almost fifty years earlier.  The next year, Brockie conveyed the land to Rodney A. Williams (through the "Brockie Deed").  The Brockie Deed also relied on the Speer Deed.

In 1981, Williams conveyed 36.653 acres out of the same land to Leonard Nikolai (through the "Williams Deed").  The Williams Deed described the property being conveyed as a part of land "described in a deed from [Brockie] to [Williams] on the 11th day of February, 1972."  The contract by which Leonard bought the property stated, "Purchaser to receive all oil, gas, coal[,] and mineral rights on the

_____

[5]Goff and his wife transferred the land to W.A. Johnson in 1917; Johnson and his wife conveyed it to Z.W. Smith in 1921; and Smith and his wife transferred it to Lon A. Speer in 1922.

5

property described herein."[6]  Leonard subsequently conveyed an undivided one-half interest in the 36.653 acres to Sandy.[7]

According to the Nikolais' pleading, in 2004, XTO contacted the Nikolais to express an interest in entering a lease concerning the minerals under the Nikolais' land.  In 2005, however, XTO told the Nikolais that XTO had discovered the mineral reservation in the Madewell Deed and that the Nikolais did not own the minerals.  In March 2007, a representative of Joint Resources Company (JRC) appeared on the Nikolais' property and informed them that JRC had a lease on the property's minerals and intended to drill a gas well there.  In April 2007, JRC's attorney gave the company a title opinion stating that several individuals other than the Nikolais owned or had legally enforceable interests in the mineral estate on the property.  The next month, the Nikolais' attorney sent

---

[6]The Nikolais state that they purchased the property in reliance upon representations by the seller and their title insurance company that the property included both the surface and the minerals.

[7]The Nikolais recognize that they are "assigns of the grantee of the Madewell Deed."  To summarize, the conveyances of the Nikolais' surface estate occurred by way of the Madewell Deed (to Goff) in 1904, deeds that successively transferred the land from Goff to the Speers between 1904 and 1922, the Speer Deed (to E.M. Madewell) in 1922, a deed from E.M. and Essie Madewell to the Pippins in 1953, the Pippin Deed to Brockie in 1971, the Brockie Deed to Williams in 1972, the Williams Deed to Leonard Nikolai in 1981, and a deed from Leonard to Sandy in 1987.  The exact acreage of the land conveyed differs between some of the deeds in the Nikolais' chain of title, but XTO's expert said that such discrepancies are common when surveyors examine land using different methods or technologies.  The Nikolais do not contend on appeal that the discrepancies in the amount of acreage conveyed affect the validity of the mineral reservation in the Madewell Deed.

6

an e-mail to JRC to explain the Nikolais' contention that they owned the mineral estate and to warn the company that if it drilled a well on the property, the Nikolais could seek legal action. JRC responded to the Nikolais' e-mail by sending the Nikolais' attorney a letter that stated in part that the company was

> disturbed to learn, after months of attempting to accommodate Mr. Nikolai with an acceptable surface use agreement before exercising its legal right to drill a well on the oil and gas leases it owns, that Mr. Nikolai is now claiming to own not just the surface of the Subject Land, but the minerals as well, and accordingly is also claiming . . . that the actual mineral owners of the minerals under the Subject Land, after being treated as owning the minerals by all persons in the chain of title to this property for over 100 years, own nothing.

> Mr. Nikolai's claims are false. . . .

> . . . .

> Mr. Nikolai, by his unfounded claims, is slandering our client's title to its oil and gas leases, which leases our client is currently attempting to sell . . . .

XTO, which apparently acquired the leases from JRC, agreed with JRC's position that the Nikolais do not own the minerals.[8]

In November 2007, the Nikolais sued XTO to quiet title, alleging that XTO's leases were invalid. They asked the trial court to declare that they owned, in fee

---

[8]XTO's brief states that the company obtained "numerous oil and gas leases" from the other appellants in this appeal, who are "successors-in-title to the Madewell Reservation." The Nikolais refer to appellants as the purported heirs and assigns of W.R. Madewell. XTO admits that it has drilled a producing well on the Nikolais' land, and the Nikolais contend that XTO has damaged the land in various ways. The Nikolais' third amended petition sought relief based on a common law trespass claim. The trial court severed this claim, however, so the claim is not subject to this appeal.

simple and without reservations, the 36.653 acre tract because Leonard had acquired the property through a warranty deed, and the Nikolais had exclusively possessed the property since 1981.[9] The Nikolais also contended that the Shields Deed and Madewell Deed were void for inadequately describing the property that they attempted to convey (therefore, the Nikolais asked the trial court to declare void a deed that is in their chain of title). Thus, the Nikolais argued that the mineral reservation contained in the Madewell Deed was ineffective and that their surface and mineral estates remained unsevered until Leonard acquired the land.[10]

XTO filed an answer that contained a general denial. Later, XTO filed a motion to abate and compel the joinder of other parties who allegedly had legal interests in the minerals beneath the Nikolais' land.

After the Nikolais amended their petition to add several defendants, some of the parties listed above filed answers. XTO amended its answer to raise two counterclaims: a suit to quiet title and an action under the UDJA that asked the

---

[9]"Fee simple title is an estate over which the owner has unlimited power of disposition in perpetuity without condition or limitation." *Hawkins v. Ehler*, 100 S.W.3d 534, 548 (Tex. App.—Fort Worth 2003, no pet.). While the Nikolais' original petition sought declaratory relief generally, their third amended petition, which was their live pleading at the time of the trial court's summary judgment decision, expressly invoked the Uniform Declaratory Judgments Act (UDJA). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001–.011 (West 2008).

[10]The Nikolais sued the other parties listed above at later times. They also brought various claims against their title company, and those claims remain pending in a Denton County district court.

8

trial court to declare the validity of the Madewell Deed.  XTO also contended that the Nikolais' claims were barred by estoppel.  The trial court appointed an attorney ad litem, Scott Alagood, for parties who had been served by publication but had not answered the Nikolais' amended petition.

XTO eventually filed a motion for summary judgment on the Nikolais' claims and on its own counterclaims on the grounds that the mineral reservation in the Madewell Deed satisfies the statute of frauds and the statement about the reservation in the Speer Deed, which is in the Nikolais' chain of title, estops them from denying the validity of the reservation.  XTO's expert, Rickey Lynn Hickman (a registered professional land surveyor), opined in an affidavit that the Madewell Deed's description, when considered with the J.L. Rose survey and the Shields Deed (both of which preceded the Madewell Deed and were expressly referenced within that deed), allowed the property that it attempted to convey to be identified with reasonable certainty.  Hickman located the "pile of rocks" mentioned in the J.L. Rose survey.

The Nikolais likewise filed a motion for summary judgment, contending that the Madewell Deed is void because it fails to comply with the statute of frauds, that there was never a valid mineral reservation, and that the surface and mineral estates therefore have remained unsevered.  The Nikolais attached excerpts from Hickman's deposition to cast doubt on his determination that the Madewell

9

Deed describes identifiable property.  In the deposition, Hickman said, among other things, that

- although he opined in his report that the "East boundary of the [Shields Deed's] 92½ acre tract is equal to the entire length of the East boundary of the 160 acre J.L. Rose Survey," the Shields Deed does not explicitly state that the land it conveys matches the entire east boundary of the survey or that it conveys land in the east half of the survey; instead, it says only that the 92½ acres are in the "east end" of the 160 acres described by the survey;

- it is mathematically possible to fit 92-and-a-half acres onto the "east end" of the survey without necessarily using the entire east line of the survey; and

- his opinion, therefore, that the 1882 Shields Deed provides a complete description of the property it conveys depends on also fitting the property described in the 1904 Madewell Deed into the 160-acre survey.

The Nikolais also filed a response to appellants' motions for summary judgment; the response listed several objections to the evidence that appellants had presented.  XTO's reply to the Nikolais' response addressed some of the Nikolais' evidentiary contentions.  The trial court sustained some of the objections and overruled others.[11]

---

[11]For example, the court sustained the Nikolais' objections to the admission of the Madewell Deed to the extent that XTO relied on the deed to aid in identifying the property described by the preceding Shields Deed, the admission of deeds executed later than the Madewell Deed and Shields Deed to the extent that they were offered to support the sufficiency of those two deeds, and part of one page of Hickman's affidavit that concerned his composition of worksheet plats based on deeds executed after the Shields Deed and Madewell Deed.  The trial court also sustained objections to the entirety of some motions for summary judgment of parties opposing the Nikolais because the motions were untimely filed.  See Tex. R. Civ. P. 166a(c) ("Except on leave of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing.").

The trial court announced that it would grant the Nikolais' summary judgment motion and deny appellants' summary judgment motions. Before the trial court signed its judgment, XTO argued that the Nikolais were not entitled to attorney's fees because the Nikolais had, in effect, prevailed on a trespass to try title claim for which attorney's fees are unavailable, even though they had pled a related claim under the UDJA, in which fees are generally authorized. In the trial court's final judgment, it decreed, in summary, that (1) the Shields Deed and Madewell Deed (including the mineral reservation) are void under the statute of frauds; (2) the Nikolais "are the rightful owners of the Property in fee simple, including both the surface and mineral estate, *pursuant to their Warranty Deed*" (the 1981 deed from Williams to Leonard); and (3) only the Nikolais have authority to lease the minerals on the property. [Emphasis added.] The trial court denied the Nikolais' claim for attorney's fees.

## Our Standard for Reviewing Summary Judgments

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort*, 289 S.W.3d at 848. We must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005). The summary judgment motion should be granted if the movant conclusively proves all essential elements of the movant's cause of action or affirmative defense as a matter of law. *See Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Mann Frankfort*, 289 S.W.3d at 848; *see Myrad Props., Inc. v. Lasalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009). The reviewing court should render the

12

judgment that the trial court should have rendered. *Mann Frankfort*, 289 S.W.3d at 848.

## Estoppel by Deed

XTO sought summary judgment on the Nikolais' claims on the ground that the Nikolais were estopped by a deed in their chain of title from denying the validity of the mineral reservation. In its second issue, XTO contends that the trial court erred by denying its motion for summary judgment that was based on its affirmative defense of estoppel by deed. *See Gutierrez v. Rodriguez*, 30 S.W.3d 558, 560 (Tex. App.—Texarkana 2000, no pet.) (describing estoppel by deed as an affirmative defense).

"The law does not lightly disregard the delivery of a deed and the recitals therein." *Jones v. Jones*, 181 S.W.2d 988, 991 (Tex. Civ. App.—Dallas 1944, writ ref'd w.o.m.); *see Simonds v. Stanolind Oil & Gas Co.*, 134 Tex. 332, 345, 114 S.W.2d 226, 234 (1938) ("A recital of one deed, in another, binds the parties, and those who claim under them by matters subsequent."). Therefore, "all parties to a deed are bound by the recitals therein, which operate as an estoppel, working on the interest in the land if it be a deed of conveyance, and binding both parties and privies; privies in blood, privies in estate, and privies in law." *Freeman v. Stephens Prod. Co.*, 171 S.W.3d 651, 654 (Tex. App.—Corpus Christi 2005, pet. denied) (quoting *Wallace v. Pruitt*, 1 Tex. Civ. App. 231, 234, 20 S.W. 728, 728–29 (Houston 1892, no writ)); *see Angell v. Bailey*, 225 S.W.3d

13

834, 841–42 (Tex. App.—El Paso 2007, no pet.) ("Estoppel by deed . . . precludes parties to a valid instrument from denying its force and effect. Although estoppel by deed operates most commonly against a grantor, a grantee is similarly a party to the deed and bound by the recitals, reservations, and exceptions therein.") (citation omitted); *Moore v. Energy States, Inc.*, 71 S.W.3d 796, 800 (Tex. App.—Eastland 2002, pet. denied) ("[T]he deed conveying the land from the Johnstons to Sears stated that the public road 'lies immediately south' of the railroad right-of-way. Thus, the Johnstons and their successors in interest are estopped from denying that the public road lies immediately south of the railroad right-of-way . . . .").

A "recital" in a deed is a "statement . . . that is used to explain the reasons upon which the transaction is based. The recital of facts binds both the parties to the deed and their privies." *Angell*, 225 S.W.3d at 842 (citation omitted); *see also Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex. 1982) ("It is well settled that 'a purchaser is bound by *every* recital, reference and reservation contained in or fairly disclosed by any instrument which forms an essential link in the chain of title under which he claims.'"); *Williams v. Hardie*, 85 Tex. 499, 506, 22 S.W. 399, 401 (1893) ("A recital or allegation in a deed . . . which is certain in its terms, and relevant to the matter in hand, will . . . be conclusive between the parties in any controversy growing out of . . . the transaction in which it was executed."); *Kimbro v. Hamilton*, 28 Tex. 560, 567 (1866) (explaining that a

14

recital in a deed "is not offered as secondary but as primary evidence, which cannot be averred against, and which forms a muniment of title"). "The doctrine of an estoppel by deed is . . . founded upon the theory that the parties have contracted upon the basis of the recited facts." *Williams*, 85 Tex. at 506, 22 S.W. at 401.

Estoppel by deed precludes parties from alleging title "in derogation of the deed [or] deny[ing] the truth of any material fact asserted in it." *Surtees v. Hobson*, 4 S.W.2d 245, 246 (Tex. Civ. App.—El Paso 1928), *aff'd*, 13 S.W.2d 345 (Tex. Comm'n App. 1929). The doctrine of estoppel by deed is of "universal recognition." *Woldert v. Skelly Oil Co.*, 202 S.W.2d 706, 709 (Tex. Civ. App.—Texarkana 1947, writ ref'd n.r.e.). The doctrine does not validate something that is otherwise invalid; rather, it figuratively "closes the mouth of the complainant." *See Spence v. State Nat'l Bank of El Paso*, 5 S.W.2d 754, 756 (Tex. Comm'n App. 1928).

Seventy years ago, in *Greene v. White*, the Texas Supreme Court resolved a dispute about the ownership of minerals contained within a 133-acre tract in Cass County. 137 Tex. 361, 364, 153 S.W.2d 575, 577 (1941) (op. on reh'g). Greene had executed a deed in 1910 that purported to transfer a surface estate to Alex Garrett but to reserve the minerals in Greene's favor. *Id.* at 365, 153 S.W.2d at 578. Garrett later claimed to own the minerals by adverse possession.

15

*Id.*  Among other issues in the case, the supreme court considered the effect of the deed on the ownership of the minerals:

> What effect is to be given to the deed from F. M. Greene to Alex Garrett, executed March 2, 1910? . . .   The deed contains the following reservation:  'It is agreed and understood that the pine timber 8 inches in diameter and larger, and that all minerals on and under said land, is reserved in this conveyance and remains the property of the said F. M. Greene.  By mineral is meant all oil, gas, coal, lignite, glass, sand, iron ore and all other minerals of every kind and description'. . . .
>
> While Alex Garrett did not sign the deed, he was a party to it as grantee . . . .   The terms, provisions and obligations of the deed are in our opinion . . . binding upon both of the parties to it.  The instrument is contractual in nature, representing and setting forth the agreement of the grantor and the grantee as to what the interests, rights and obligations of said parties shall thereafter be with respect to the land. . . .
>
> *The general rule is that the grantee in a deed accepted by him is a party to the deed, even though he does not sign it, and that he is concluded by recitals in the deed and by reservations contained therein in favor of the grantor.*  'The obligations undertaken by the parties to a deed are binding contractually; and where the conveyance is by way of deed poll—that is, one executed by the grantor alone—obligations are enforceable against the grantee by virtue of his acceptance of the deed.' . . .   The recitals which give the surface estate to Garrett and reserve the mineral estate to Greene are . . . contractual.  The[y] define the character and extent of the ownership and interests of the parties in the land affected by the deed.
>
> *It is held that the recital of one deed in another binds the parties to the deed containing the recital, and those who claim under them, and may take the place of a deed and thus form a muniment of title.*
>
> . . . .
>
> The argument is made that the deed from Greene to Garrett neither conveyed the surface to Garrett nor reserved the minerals to

16

Greene, because Greene had no title either to the land or to the minerals, the title being in Garrett by virtue of adverse possession and the land not being in [a specified] survey. . . . *[T]he question presented is not whether Greene had good title and conveyed good title to the surface to Garrett and reserved or excepted to himself good title to the minerals. It is: Are the parties to the deed and those claiming under them bound, as between themselves, by the recitals and provisions of the deed?*

. . . .

. . . [S]ince the parties to the Greene-Garrett deed are bound by the terms of their contract, it was not necessary, in order to make the reservation in the deed effective in favor of Greene and those holding under him and against Garrett and those holding under him, that good title to the land be shown in Greene at the time when the deed was executed. The deed, as between the parties to it, having worked a severance of the mineral estate from the surface estate, such possession of the surface as was exercised by Garrett, and those claiming under him, after the execution of the deed was not adverse possession of the minerals.

*Id.* at 374–79, 153 S.W.2d at 583–85 (emphasis added) (citations omitted).

More recently, in *Angell*, the El Paso Court of Appeals considered the effect of a 1936 deed that recited that it was conveying 320 acres "save and except," among other tracts, a ten-acre tract that had been conveyed to Jack Ellison and a two-acre tract "sold to S.A. Bailey." 225 S.W.3d at 837. There were no recorded deeds related to the Ellison or Bailey tracts, and neither Ellison nor Bailey ever made use of the property. *Id.* at 838. Angell, the granddaughter of E.D. Warner, the 1936 deed's grantee, brought suit to remove a cloud on the property's title created by the Ellison and Bailey interests, but the trial court ruled that Angell was estopped to deny Ellison's and Bailey's titles. *Id.* at 837–38. On appeal, Angell contended that the exceptions were void for lack of a sufficient

17

description and that the twelve acres had passed to her grandfather. *Id.* at 838.

The El Paso court disagreed, reasoning,

> While the exceptions listed in the E.D. Warner deed *did not create (or convey) any interest in the property* which Bailey and/or Jack Ellison did not already possess, *the exceptions are still effective to prevent Angell from denying their existence*. "Estoppel by deed stands for the general proposition that 'all parties to a deed are bound by the recitals therein, which operate as an estoppel, working on the interest in the land if it be a deed of conveyance, and binding both parties and privies; privies in blood, privies in estate, and privies in law.'" . . .
>
> . . . .
>
> The E.D. Warner deed unambiguously recites that, within the southeastern-most forty acres of the land covered thereby, ten acres had previously been conveyed to Jack Ellison and two acres had been previously . . . conveyed to Bailey. Angell is a decedent of the grantee in the deed, privy to its language by her family relationship to both the grantors and the grantee. She is bound by the recitals, just as her grandfather was. There has been no argument that this deed is invalid in any way. The deed recites that the exceptions were made because the acres had already been transferred to the parties referenced, including Jack Ellison and Bailey. Angell is estopped to deny the truth of the recitals in the instrument and therefore cannot deny the Jack Ellison and Bailey interests.

*Id.* at 841–42 (emphasis added) (citations and footnotes omitted).

The Nikolais' chain of title, by which the trial court determined that they owned the surface and mineral estates in their tract, contains the Speer Deed, which recites, "It is thoroughly understood that the Mineral Rights upon this tract of land are not transferred by this instrument, same having been retained by W.R. Madewell in deed to J.L. Goff said deed dated Oct. 5 1904, recorded in . . . Deed Records of Denton County, Texas." Two other deeds in the Nikolais' chain

18

of title, the Pippin Deed and the Brockie Deed, rely on the Speer Deed in their descriptions of the conveyed property. The Nikolais recognize that "[r]ecitals in a deed of particular facts constitute prima facie proof of those facts." "[W]here a deed refers to another deed, or a map, or a survey, it has the effect to incorporate such deed, map or survey into the description, the same as if copied into the deed itself, and what is therein described will pass." *Brown v. Chambers*, 63 Tex. 131, 135 (1885); *see Dixon v. Amoco Prod. Co.*, 150 S.W.3d 191, 194 (Tex. App.—Tyler 2004, pet. denied) ("[I]t is a well settled rule of law that in the construction of written instruments, all instruments in a chain of title, when referred to in a deed . . . will be read into it."); *Klein v. Humble Oil & Ref. Co.*, 67 S.W.2d 911, 918–19 (Tex. Civ. App.—Beaumont 1934) (holding that a lease's reference to a deed incorporated the deed into the lease and into the description of the property), *aff'd*, 126 Tex. 450, 86 S.W.2d 1077 (1935).

Thus, for the reasons explained in the cases cited above, we conclude that the Nikolais, who are in privity with E.M. Madewell (the grantee of the Speer Deed),[12] Pippin, and Brockie, and who claim title under the deeds involving those parties, are bound by the recitation of the mineral reservation in the Speer Deed and are estopped from denying it.

We recognize that estoppel by deed "is the product of a good and valid deed." *Masgas v. Anderson*, 310 S.W.3d 567, 571 (Tex. App.—Eastland 2010,

---

[12]The successive conveyances of property establish privity. *See Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987).

pet. denied) (citing *Angell*, 225 S.W.3d at 842). The Nikolais argue that estoppel by deed cannot apply here because the Madewell Deed is void for lack of a sufficient description of the land it conveys. The Nikolais rely, in part, on a case in which our supreme court held that estoppel by deed did not apply to an instrument that was signed in blank, without including any description of the property that the instrument related to. *See Republic Nat'l Bank of Dallas v. Stetson*, 390 S.W.2d 257, 260–61 (Tex. 1965). But XTO did not base its estoppel by deed defense on the Madewell Deed. Rather, XTO based its defense on the subsequent deeds described above, in particular the Speer Deed, and the Nikolais never challenged the sufficiency of the property descriptions in those deeds.

For all of these reasons, we sustain XTO's second issue, and we hold that the trial court erred by granting summary judgment for the Nikolais on their quiet title and UDJA claims. Likewise, we hold that the trial court erred by denying XTO's motion for summary judgment on its estoppel by deed defense.

Because we hold that the Nikolais are estopped from denying the mineral reservation that is recited by deeds in their chain of title, we need not decide whether the trial court correctly ruled that the Madewell Deed and Shields Deed are void for containing legally insufficient descriptions of the property that they conveyed under the statute of frauds. *See Greene*, 137 Tex. at 376, 153 S.W.2d at 584 ("[T]he question presented is not whether Greene had good title and

20

conveyed good title . . . . *It is: Are the parties to the deed and those claiming under them bound, as between themselves, by the recitals and provisions of the deed?*") (emphasis added). Thus, we do not need to decide whether the trial court erred by denying XTO's motion for summary judgment on its counterclaim that sought a declaration of the validity of the Madewell Deed for purposes of showing that the Nikolais did not own the mineral estate to the property. Although XTO labeled its other counterclaim as a suit to "quiet title," XTO has not sought a judgment regarding the status of its own title.[13] Instead, XTO asked the trial court to decree only that the Nikolais did not own the mineral estate beneath their property.[14] Our holding regarding XTO's estoppel by deed defense resolves

---

[13]Generally, a plaintiff in a suit to quiet title must "prove, as a matter of law, right, title, or ownership in himself with sufficient certainty to enable the court to see that he has a right of ownership and that the alleged adverse claim is a cloud on the title that equity will remove." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). During oral argument, XTO's counsel, speaking on behalf of all appellants, stated that XTO did not seek to have ownership or title rendered to itself as a result of this suit.

[14]The Nikolais contend that neither XTO nor the other appellants produced evidence in the trial court of their interest in the mineral estate that flows from the reservation that the Speer Deed recognized. For reasons stated below, we disagree, although we recognize that the evidence was not attached to a summary judgment motion or response. We note that the Nikolais brought appellants into this litigation through their pleadings, recognizing that appellants asserted an interest that was contrary to the Nikolais' claims. Although the Nikolais concisely contend that appellants' alleged failure to prove an ownership interest in the disputed minerals means that they may not have standing, the Nikolais have not cited authority establishing that appellants were required to prove their own title to raise an estoppel by deed defense to the Nikolais' claims against them. *Cf. State & Cnty. Mut. Fire Ins. Co. ex rel. S. United Gen. Agency of Tex. v. Walker*, 228 S.W.3d 404, 406, 412 (Tex. App.—Fort Worth 2007, no pet.) (holding that by joining a defendant in a UDJA action, the plaintiff waived

21

that issue, so we need not address whether XTO would otherwise be entitled to relief on the elements of a quiet title claim.[15]

Since the Nikolais cannot deny the reservation, we conclude that the dispute about the original validity of the reservation based on the 1904 Madewell Deed, which relates to XTO's first and third issues, is moot.[16]  *See* Tex. R. App. P. 47.1; *Doe v. Tex. Ass'n of Sch. Bds., Inc.*, 283 S.W.3d 451, 464–65 (Tex. App.—Fort Worth 2009, pet. denied).  We overrule XTO's first and third issues on that basis.

**The Nikolais' Issues**

**Adverse possession and prior possession**

In their first issue, the Nikolais argue that the trial court erred by not granting summary judgment on the ground of title by adverse possession or prior possession.  XTO contends in part that the Nikolais did not provide any evidence of these claims because its objection to Leonard Nikolai's affidavit should have been sustained.  We agree.

---

any argument that the defendant did not have standing to challenge the plaintiff's claims).

[15]Therefore, nothing in this opinion should be construed as an adjudication of the validity of appellants' interest, if any, in the minerals underneath the Nikolais' land.

[16]Although the Nikolais attacked the validity of the Madewell Deed to contend that its mineral reservation was ineffective, no party has directly challenged the Nikolais' ownership of their surface state, which is chained to that deed.

22

Leonard's affidavit stated, "I have read *Plaintiffs' Motion for Summary Judgment* and *Plaintiffs' Second Amended Petition* and attest that all facts recited therein are true and correct to the best of my knowledge . . . ." The Nikolais' brief indicates that they rely solely on this statement as evidence for their adverse possession and prior possession claims. XTO objected to the statement on the grounds that it "constitute[d] an inadmissible conclusory statement that [was] not supported by any other factual statements in Mr. Nikolai's Affidavit," but the trial court overruled that objection.

In its opening brief, XTO stated, "To the extent the subject of XTO's objection [to Leonard's affidavit] may be introduced by the Appellees, the trial court erred in overruling XTO's objection, and XTO reurges its objection before this Court." The Nikolais then argued as part of their appeal, in their opening brief, that the trial court erred by not granting summary judgment on their adverse possession and prior possession claims, and the Nikolais expressly relied on Leonard's affidavit in that argument. XTO expressly contended in response that the trial court erred by overruling its objection to Leonard's affidavit. Contrary to the Nikolais' assertion in their reply brief, therefore, we conclude that we may properly consider XTO's objection. Moreover, contrary to the Nikolais' contention, a party is not required, under rule of appellate procedure 25.1(d), to list every interlocutory order in a notice of appeal to appeal the ruling on that

23

order.  *See* Tex. R. App. P. 25.1(d); *Gunnerman v. Basic Capital Mgmt., Inc.*, 106 S.W.3d 821, 824–25 (Tex. App.—Dallas 2003, pet. denied).

We review a trial court's evidentiary rulings related to a motion for summary judgment for an abuse of discretion.  *Reynolds v. Murphy*, 188 S.W.3d 252, 259 (Tex. App.—Fort Worth 2006, pet. denied) (op. on reh'g), *cert. denied*, 549 U.S. 1281 (2007).  Many cases state that pleadings and motions for summary judgment are not competent summary judgment evidence, even if they are sworn to or verified within the pleading or motion.  *See, e.g.*, *Hidalgo v. Sur. Sav. & Loan Ass'n*, 462 S.W.2d 540, 545 (Tex. 1971); *Garner v. Long*, 106 S.W.3d 260, 268 (Tex. App.—Fort Worth 2003, no pet.); *Campbell v. Fort Worth Bank & Trust*, 705 S.W.2d 400, 402 (Tex. App.—Fort Worth 1986, no writ).  We cannot conceive any logical reason, therefore, to conclude that the facts contained in such pleadings and motions should be competent evidence if they are sworn to or verified by a different, independent document, such as an affidavit.  *See Keenan v. Gibraltar Sav. Ass'n*, 754 S.W.2d 392, 394 (Tex. App.—Houston [14th Dist.] 1988, no writ); *Loomis v. City of Dallas*, 472 S.W.2d 809, 811 (Tex. Civ. App.—Dallas 1971, writ ref'd n.r.e.) ("An affidavit which simply adopts the pleadings in a case is insufficient either to support or defeat a motion for summary judgment.") (citing *Duffard v. City of Corpus Christi*, 332 S.W.2d 447, 449 (Tex. Civ. App.—San Antonio 1960, no writ)); *see also* Tex. R. Civ. P. 166a(f) (stating that a summary judgment affidavit "shall set forth such facts as

24

would be admissible in evidence"). We hold that the trial court abused its discretion by overruling XTO's objection to Leonard's affidavit because, as asserted in the trial court by XTO, the affidavit was not supported by its own factual statements but instead impermissibly relied on facts contained in a pleading and a motion. We conclude, therefore, that the Nikolais did not present any competent evidence to support their adverse possession or prior possession claims.

Moreover, regardless of whether the Nikolais properly presented evidence on those claims, our holding above that the Nikolais are estopped from denying the validity of the mineral reservation forecloses the Nikolais' contention that they adversely possessed the minerals. Adverse possession is an "actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." Tex. Civ. Prac. & Rem. Code Ann. § 16.021(1) (West 2002); *see Turner v. Mullins*, 162 S.W.3d 356, 367 (Tex. App.—Fort Worth 2005, no pet.) (explaining that the possession "must be actual, visible, continuous, notorious, distinct, hostile, and of such character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant"). "Where minerals have been severed, the surface owner cannot claim adverse possession of the minerals by possession of the surface, but he must take actual possession of the minerals for the statutory period." *Smoot v. Woods*, 363 S.W.2d 798, 801 (Tex. Civ. App.—Fort Worth

1962, writ ref'd n.r.e.); *see Natural Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 193 (Tex. 2003) ("[C]ourts across the country including Texas courts have said that in order to mature title by limitations to a mineral estate, actual possession of the minerals must occur. In the case of oil and gas, that means drilling and production of oil or gas.") (citations and footnotes omitted).

The Nikolais conceded in their second amended petition that they have never leased the mineral rights on their property and that prior to the facts relevant to this suit, "no one ha[d] ever taken any action to excavate, drill for, or produce any oil, gas, or other minerals in the Property." The Nikolais did not present evidence contradicting this concession. Thus, they cannot establish that they adversely possessed the mineral estate.

For all of these reasons, we overrule the Nikolais' first issue.

**Rulings on evidentiary objections**

In their second issue, the Nikolais argue that the trial court made several erroneous rulings on their objections to XTO's summary judgment evidence. The rulings that the Nikolais challenge, however, would not affect our disposition of the appeal under the reasons set forth in this opinion even if we were to hold that the trial court erred by making the rulings.[17] Thus, we overrule the Nikolais' second issue as moot. *See* Tex. R. App. P. 47.1; *Doe*, 283 S.W.3d at 464–65.

---

[17]For example, the Nikolais argued in the trial court that deeds executed after the Madewell Deed were inadmissible to show that the Madewell Deed contained an adequate property description. As stated, however, we need not address the adequacy of the Madewell Deed's property description.

26

**The Nikolais' request for attorney's fees**

In their third issue, the Nikolais argue that the trial court erred by denying their request for an award of attorney's fees. The Nikolais contend that they were entitled to recover attorney's fees under the UDJA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."). In XTO's motion for entry of a final judgment, it contended that as a matter of law, the Nikolais were not entitled to attorney's fees because although they had pled a claim under the UDJA, they had essentially brought a trespass to try title suit. The trial court did not specify its reason for denying fees.

Contrary to the Nikolais' argument, we conclude that XTO preserved its objection to the Nikolais' recovery of attorney's fees by filing the motion for entry of a final judgment (which contained a section titled, "Motion to Deny Attorney's Fees") and by contending in a later hearing that the Nikolais were not entitled to such fees. XTO filed the motion at a time when the trial court had not ruled on the attorney's fees issue. *See* Tex. R. App. P. 33.1(a); *cf. Krabbe v. Anadarko Petroleum Corp.*, 46 S.W.3d 308, 320–21 (Tex. App.—Amarillo 2001, pet. denied) (holding that an appellant waived an objection to the award of attorney's fees under the UDJA because the appellant did not urge in the trial court that the appellee could not recover the fees on the ground that the suit was, in substance, a trespass to try title suit). We also note that during the hearing on XTO's motion

27

for entry of a final judgment, XTO stated that it had withdrawn any claim for attorney's fees.

Section 22.001 of the property code "expressly provides that it is '*the* method for determining title to . . . real property.'" *Martin v. Amerman*, 133 S.W.3d 262, 267 (Tex. 2004); *see* Tex. Prop. Code Ann. § 22.001(a) (West 2000). In a case similar to this appeal, we recently explained,

> A declaration under the UDJA is appropriate "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." However, a party may not recover attorneys' fees under the UDJA when the only issues, aside from attorneys' fees, concern clearing of title or trespass to try title. "Any suit that involves a dispute over the title to land is, in effect, an action in trespass to try title, whatever its form." Because a claim for declaratory relief is "merely incidental to the title issues," the UDJA will not supplant a suit to quiet title by allowing attorneys' fees under such circumstances.

> Here, Poag brought a declaratory action seeking to "quiet title and/or acquire title to property." In his prayer, Poag sought a judgment "[d]eclaring that the oil and gas lease executed by Defendant [Flories] is invalid and unenforceable, ordering it removed from the title of the properties made the subject of this litigation, and quieting title in [Poag]".

> In substance, Poag's claim for declaratory relief is a claim to quiet title. Although Poag couches his declaratory action in terms of a request for a declaration, everything he requests of the court is necessary to, and a component of, the ultimate relief he seeks, which is to clear the title on the two tracts of land he purchased from Anson. When the essence of the suit is in trespass to try title, attorneys' fees are not recoverable. Thus, as a matter of law, Flories was not entitled to an award of attorneys' fees under the UDJA.

*Poag v. Flories*, 317 S.W.3d 820, 828–29 (Tex. App.—Fort Worth 2010, pet. denied) (citations omitted); *see Martin*, 133 S.W.3d at 267 (holding that a dispute

regarding the boundary of property was a trespass to try title suit, which foreclosed the plaintiffs' ability to collect attorney's fees under the UDJA); *cf. Roberson v. City of Austin*, 157 S.W.3d 130, 136–37 (Tex. App.—Austin 2005, pet. denied) (holding that a dispute over an easement was not a trespass to try title claim and could therefore be brought under the UDJA because an easement is a nonpossessory property interest).[18]

The Nikolais' second amended petition asked the trial court to decree that they were the "rightful owners of the Property in fee simple, including both the surface and mineral estate." The trial court's judgment declared the Nikolais as the owners and stated that the "cloud on [their] title created by [appellants'] claim to the mineral estate is removed and quieted." And the Nikolais have recognized on appeal that their suit is based primarily on their claim for legal title. Thus, under our reasoning in *Poag*, although this suit concerns the validity of a deed, which may otherwise be a proper subject for a UDJA claim, we are compelled to hold that the essence of the Nikolais' suit was to obtain a declaration of title and that, as a matter of law, they were not entitled to attorney's fees under the UDJA. 317 S.W.3d at 828–29; *see also Aguillera v. John G. & Marie Stella Kenedy Mem'l Found.*, 162 S.W.3d 689, 697–98 (Tex. App.—Corpus Christi 2005, pet. denied) (holding that attorney's fees were unavailable

---

[18]"A mineral fee owner has a possessory estate in the land. As such he has the exclusive power to lease the land to another for mineral development or to develop the minerals himself." *Dearing Inc. v. Spiller*, 824 S.W.2d 728, 732 (Tex. App.—Fort Worth 1992, writ denied).

because although the suit concerned the validity of a land document, it was ultimately a title dispute); *Hawk v. E.K. Arledge, Inc.*, 107 S.W.3d 79, 84 (Tex. App.—Eastland 2003, pet. denied) ("The reality in this lawsuit is that it involves the issue of title. Attorney's fees are not recoverable when the real essence of the suit is one in trespass to try title.").

XTO also contended in the trial court that the Nikolais were not entitled to fees because they were neither reasonable nor necessary under the UDJA in this case. XTO argued that its "role in this case was simply defending its record title to interests it expended great sums of money to develop. Whether XTO ultimately prevailed, it would be inequitable and unjust to punish XTO for simply defending its interests against [the Nikolais'] claims." Finally, XTO opined that the mistake "that put the parties in their current positions was that of [the Nikolais'] title company," which the Nikolais have sued.

When a statute states that a trial court "may" award attorney's fees, such an award is reviewable for an abuse of discretion. *Smith v. McCarthy*, 195 S.W.3d 301, 304 (Tex. App.—Fort Worth 2006, pet. denied) (op. on reh'g); *see Street v. Skipper*, 887 S.W.2d 78, 83 (Tex. App.—Fort Worth 1994, writ denied). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

30

We cannot conclude that a trial court abused its discretion merely because we would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995).

For the reasons argued by XTO in its motion for entry of a final judgment, we hold that the trial court could have reasonably concluded that requiring XTO to pay the Nikolais' attorney's fees was not equitable or just even though the trial court ultimately concluded that the Nikolais owned the minerals associated with their property. Thus, for those reasons, and in light of our conclusion that deeds in the Nikolais' chain of title estop them from succeeding on their quiet title or UDJA claims, we hold that even if the Nikolais' request for attorney's fees was not precluded as a matter of law, the trial court did not abuse its discretion in denying an award of attorney's fees.

We overrule the Nikolais' third issue.

**The Effect of Our Decisions Explained Above on the Other Appellants and Appellees and on all of the Trial Court Defendants**

The parties whose interests are aligned with XTO have responded to the Nikolais' suit in the trial court and on appeal in different ways. Specifically,

- XTO Energy Inc. answered the Nikolais' suit by filing a general denial, asserting the affirmative defense of estoppel by deed, and asserting counterclaims for declaratory judgment and to quiet title (which asked for a decree that the Nikolais do not have a claim to the mineral estate in their property);

- eight individual defendants, who were all represented by Ronald Holman (the "Holman Defendants") responded to the suit in the same way as XTO;

- NASA Energy Corporation and an individual defendant filed general denials and raised statute of limitations affirmative defenses but did not raise estoppel by deed defenses;

- some individual defendants only generally denied the Nikolais' claims, and other defendants did not expressly answer the claims;

- XTO Energy Inc. and the Holman Defendants sought summary judgment on their estoppel by deed affirmative defenses;

- some defendants, including defendants represented by Alagood (the "Alagood Defendants") who had not pled estoppel by deed, attempted to join other motions for summary judgment by the parties who had pled the defense;[19] and

- only some of the defendants in the trial court appealed the trial court's judgment.

Based on these facts, the Nikolais argue that we should affirm the trial court's judgment at least as to the defendants who failed to appeal or properly respond to the Nikolais' claims in the trial court. In a typical case, we would agree. XTO contends, however, that because the claims of all of the defendants are interwoven and dependent, we should reverse the trial court's judgment as to all parties.

As explained by the supreme court,

> While it is generally the rule that non-appealing parties are excluded from relief upon appeal,[20] this court has held that reversal

---

[19]The trial court sustained the Nikolais' objections to some of the joinders on the grounds that they were not timely filed and that they were not affirmative requests for summary judgment.

[20]*See* Tex. R. App. P. 25.1(c) ("The appellate court may not grant a party who does not file a notice of appeal more favorable relief than did the trial court except for just cause.").

of a trial court order may extend to non-appealing parties "when the rights of the appealing parties are so interwoven or dependent on each other as to require a reversal of the entire judgment." *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 446 (Tex. 1989) (citing *Turner, Collie & Braden v. Brookhollow, Inc.*, 642 S.W.2d 160, 166 (Tex. 1982)). This exception to the general rule is applied on a case-by-case basis.

*Ex parte Elliot*, 815 S.W.2d 251, 251–52 (Tex. 1991) (reversing an expunction order as to a district clerk and sheriff although only the district attorney appealed the order).

Based on evidence submitted in the trial court, the rights of the defendants with respect to the minerals located on the Nikolais' land appear to be interwoven and dependent. In XTO's motion to abate, it alleged that the parties later added to the lawsuit by the Nikolais' first amended petition were lessors that executed oil and gas leases in favor of XTO or XTO's predecessors in interest, nonoperating working interest owners of the minerals on the property subject to the suit, persons claiming to have a nonparticipating royalty interest in the minerals, and unleased alleged owners of the minerals that the Nikolais claimed to own. In essence, XTO asked the trial court to join all parties who could claim to have an interest in the minerals at issue that was inconsistent with the Nikolais' claim of ownership. *See* Tex. R. Civ. P. 39(a). XTO referred to these parties collectively as the "Madewell Parties," and XTO attached an affidavit to its motion (by Ryan Skelly, an XTO landman) that recites that each of the Madewell Parties "own[s] an interest in the mineral estate beneath the surface estate owned by Leonard and Sandy Nikolai."

33

It would seem to be unreasonable and chaotic for the Nikolais to be estopped from denying the mineral reservation as to some of the Madewell Parties, and therefore have no rights to execute a mineral lease or otherwise claim any interest in any of the minerals as related to those parties, but not estopped as to the others, and therefore nonetheless have the ability to take these actions. Similarly, it would be inconsistent and unworkable for the Nikolais to have obtained rights to the minerals by adverse possession or prior possession as to some parties but not as to others. It is also reasonable to infer from Skelly's affidavit and other parts of the record that affirming the trial court's judgment as to nonappealing defendants would affect XTO's interest through leases that have been executed by those defendants.[21]

To provide the appealing and prevailing parties with "full and effective relief," therefore, we conclude that we must reverse the entire judgment as to all of the defendants in the trial court. *See Turner*, 642 S.W.3d at 166 (reversing an entire judgment because the "possibility of . . . inconsistent results is intolerable").

---

[21]A common oil or gas lease creates in the lessee a fee simple determinable interest in the mineral estate, while the lessor retains a possibility of reverter. *Jupiter Oil Co. v. Snow*, 819 S.W.2d 466, 468 (Tex. 1991).

**Alagood's Request for Attorney's Fees**

In July 2009, the trial court signed an agreed order that approved payment of $12,070.33 for ad litem fees to Alagood. The fees were taxed as a cost against XTO Energy Inc. The order, however, did not provide for appellate fees for Alagood. A year later, during the pendency of this appeal, Alagood filed an application in the trial court to be paid $21,163.64 in additional fees and expenses that related to appellate representation of his clients. The trial court dismissed the application for want of jurisdiction. Alagood sought to appeal from the dismissal.

In response, on September 21, 2010, we issued an order indicating that we would remand the appellate fee issue to the trial court upon resolution of this appeal. *See Cahill v. Lyda*, 826 S.W.2d 932, 933 (Tex. 1992) (remanding a case to the trial court for the limited purpose of determining the reasonable attorney's fees and expenses of the attorney ad litem for his services on appeal). Under the rationale stated in that order, we will remand this case to the trial court so that the trial court may determine reasonable attorney's fees for Alagood and which party the fees should be taxed against. *See id.*; *Harris Cnty. Children's Protective Servs. v. Olvera*, 971 S.W.2d 172, 176 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (op. on reh'g) (agreeing that *Cahill* authorizes an appellate court to remand the issue of ad litem appellate attorney's fees).

## Conclusion

Based on our conclusions that the trial court erred by granting the Nikolais' motion for summary judgment and by denying XTO's motion for summary judgment, we reverse the trial court's judgment with respect to the court's determinations that (1) the mineral estate of the property was never validly reserved or severed from the surface estate, (2) a mineral lease on the property may only be made by the Nikolais, (3) the Nikolais are the owners of the property in fee simple, including both the surface and mineral estate, pursuant to their warranty deed, and (4) the cloud on the Nikolais' title created by appellants' claim to the mineral estate is removed and quieted. We render judgment, instead, in favor of all of the trial court defendants that the Nikolais are estopped by deed from claiming that they own any interest in the minerals beneath the surface of their property. We also affirm the trial court's judgment to the extent that it denied the Nikolais' claim for attorney's fees, and we remand this case to the trial court for the limited purpose of resolving issues related to Alagood's ad litem attorney's fees.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and MCCOY, JJ.

DELIVERED: August 30, 2011