Opinion by: Sandee Bryan Marion, Chief Justice
The underlying lawsuit involves a dispute over the ownership of a mineral interest in land. Appellants, Jerome Dragon Jr. and Patricia G. Dragon, appeal from two summary judgments rendered in favor of appellees, Joseph Russell Trial and Michael Leo Trial. We reverse summary judgment in favor of the appellees and render summary judgment in favor of appellants.
FACTUAL BACKGROUND
In 1932, the underlying property-237 acres in Karnes County-was conveyed in equal shares to eight siblings, one of whom was appellees' father Leo Trial. After one of the siblings died, each of the remaining seven siblings owned an undivided 1/7th interest in the property.
On September 26, 1983, Leo Trial signed a deed (the "1983 Gift Deed") conveying "one-half (1/2) of all [his] right, title and interest in and to" the property to his wife, Anna Ruth Trial ("Ruth Trial"). The 1983 Gift Deed was recorded in Karnes County on September 28, 1983.
In December 1992, the Dragons purchased the property from Leo Trial and his still-living siblings. The Dragons paid $104,280 for the property, part of which was financed over a fifteen-year period. The sale was memorialized by more than one deed because Leo Trial and his still-living siblings signed separate, but identical, deeds (collectively, the "1992 Deed"). The Dragons did not obtain a title opinion or title insurance, and were not represented by counsel. Leo and Ruth's attorney, John Berry, prepared the closing documents. The Dragons were not aware of the 1983 Gift Deed.
Leo died on February 26, 1996. Under Leo's will, his entire estate was devised to the Leo Trial Trust for the remainder of Ruth's life, and, upon her death the corpus went to the appellees, Leo and Ruth's two sons, Joseph and Michael. The will named Ruth as independent executrix of the estate *163 and trustee of the Leo Trial Trust. After Leo's death, Ruth continued to accept and endorse payments made for the purchase of the property. The Dragons paid the balance of the note owed to Leo on December 26, 1997, and they continued payments to the other siblings. After the entirety of the debt was paid, all sellers signed a Release of Lien. Ruth signed on Leo's signature line as "Leo Trial by Ruth Trial." Ruth died on January 28, 2010. Although Ruth had a will, it was not probated. Under Leo's will, after Ruth's death, the corpus of the trust estate went to Joseph and Michael.
The 1992 Deed contained a mineral reservation that expired after fifteen years, at which point the mineral estate vested in the Dragons. Oil and gas production on the property continues to this day. In January 2008, the Dragons informed BlackBrush Oil & Gas LP, the oil and gas lease operator, that the reservation expired; and, under a new division order, BlackBrush began distributing royalties to the Dragons.[1] On February 13, 2014, an Updated Mineral Ownership & Lease Status Report, prepared for BlackBrush, contained the following comment:[2]
Comment 2: Also, Anna Ruth Trial owned in her own right an undivided 1/2 of 1/7th interest, as conveyed to her in [the 1983] Gift Deed.... Anna Ruth Trial never conveyed to [the Dragons]. Anna Ruth Trial apparently died intestate on January 28, 2010 leaving two children, Michael Leo Trial and Joseph Russell Trial as her heirs.
In March 2014, BlackBrush contacted the Dragons and the Trials about the above issue. Pursuant to a new division order, BlackBrush began paying a portion of the royalties to Joseph and Michael Trial (hereinafter, collectively, "the Trials"), which payments were paid into a suspense account.
PROCEDURAL HISTORY
On July 28, 2014, the Dragons filed suit against the Trials. The Dragons alleged breach of contract (the 1992 Deed), estoppel by deed, trespass to try title by limitations, suit to quiet title by limitations, and promissory estoppel.[3] The Dragons asserted the 1992 Deed conveyed to them a 14/14th interest in the property, and the Trials owned no interest in the property.
In March 2015, the Dragons filed a motion for both a traditional and a no-evidence summary judgment. The Dragons asserted Ruth ratified the 1992 Deed, the Trials breached the 1992 Deed's general warranty clause, and the Trials were estopped from asserting any interest in the property.
A few months later, the Trials filed a competing joint motion for traditional and no-evidence summary judgment. The Trials asserted the 1992 Deed conveyed to the Dragons only a 13/14th interest in the property, while they [the Trials] held the remaining 1/14th interest they inherited from their mother. The Trials moved for a traditional summary judgment on the following five claims asserted by the Dragons: (1) breach of contract, (2) estoppel by *164 deed, (3) promissory estoppel, (4) declaratory relief, and (5) trespass to try title. The Trials moved for a no-evidence summary judgment on the following two adverse possession claims: (1) trespass to try title by limitations and (2) suit to quiet title by limitations.
The trial court denied the Dragons' motion for summary judgment and granted the Trials' traditional motion for summary judgment. However, because the trial court found "some evidence exists with regard to both the three and five year adverse possession claims," the trial court denied the Trials' no-evidence motion for summary judgment.
Following the trial court's rulings, the Dragons had pending claims for breach of implied warranty, reformation of the 1992 Deed for mutual mistake, adverse possession of the property's surface and mineral estates, declaratory relief that the 1983 Gift Deed was invalid, and attorney's fees.
In May 2016, the Trials filed a motion for partial summary judgment on the Dragons' claims for adverse possession of the minerals, breach of implied warranty, reformation of deed, and invalidity of the 1983 Gift Deed, and a no-evidence summary judgment on the request for declaratory relief. The next day, the Dragons non-suited their trespass to try title by limitations, trespass to quiet title by limitations, and trespass to try title by adverse possession-all as to the mineral estate. The trial court granted the Trials' motion for partial summary judgment. Any remaining claims, including those related to the surface estate, were non-suited. The Dragons now appeal.
SUMMARY JUDGMENT STANDARD OF REVIEW
We review a grant of summary judgment de novo. Nall v. Plunkett , 404 S.W.3d 552, 555 (Tex. 2013). To prevail on a traditional motion for summary judgment, the movant must show "there is no genuine issue as to any material fact and the [movant] is entitled to judgment as a matter of law...." TEX. R. CIV. P. 166a(c) ; accord Nixon v. Mr. Prop. Mgmt. Co. , 690 S.W.2d 546, 548 (Tex. 1985). In a no-evidence motion for summary judgment, the moving party must assert there is no evidence of one or more essential elements of the claim on which the non-movant would have the burden of proof at trial. See TEX. R. CIV. P. 166a(i). Once the no-evidence motion is filed, the burden shifts to the non-movant to present evidence raising an issue of material fact as to the elements challenged in the motion. See Mack Trucks, Inc. v. Tamez , 206 S.W.3d 572, 582 (Tex. 2006). If the non-movant produces more than a scintilla of evidence raising a genuine issue of material fact on the challenged elements, the trial court must deny the motion. See Hamilton v. Wilson , 249 S.W.3d 425, 426 (Tex. 2008). However, the non-movant is not required to marshal its entire proof, as its response need only raise a fact issue on the challenged elements. Id. When parties file competing motions for summary judgment, and the trial court grants one and denies the other, we review all issues presented and render the judgment the trial court should have rendered. Comm'rs Court of Titus Cty. v. Agan , 940 S.W.2d 77, 81 (Tex. 1997).
ESTOPPEL & BREACH OF EXPRESS WARRANTY
In their motion for summary judgment, the Dragons argued the Trials are estopped from asserting title to any portion of the property because the 1992 Deed conveyed "all that certain parcel or tract of land," and the Trials, as Leo's heirs, are bound by the deed's warranty. The Dragons asserted that, once Ruth died, the after-acquired doctrine was triggered and *165 any share of the property the Trials may have acquired from their mother vested immediately in the Dragons. The Dragons contend that as Leo's heirs, the Trials are obligated to warrant and defend the Dragons against all claims of an interest in the property. The Dragons argued the Trials breached their obligation under the 1992 Deed to prevent unlawful claims of title to the property, including the claims asserted by the Trials themselves.
In their motion for summary judgment, the Trials asserted estoppel by deed did not apply and the Dragons' breach of express warranty claim must fail because the Trials were not claiming an interest in the property under their father, and they are not "successors in interest" to their father with respect to the 1992 Deed. Instead, they contend their claim to an interest in the property arises from their mother who did not sign the 1992 Deed and, thus, could not be bound by the deed. The Trials argued estoppel by deed applies only to the parties to a deed, and, according to the Trials, Ruth was not a party to the deed.
A. What Did the 1992 Deed Convey?
The position taken by all parties hinges on what the 1992 Deed conveyed. The 1992 Deed states, in pertinent part, as follows:
... WE, LEO TRIAL of Karnes County, Texas, [and other siblings] hereinafter called Grantor, for and in consideration of the sum of [$24,345.45] cash in hand paid by [the Dragons], the receipt and sufficiency of which is hereby acknowledged, and the further consideration of the execution and delivery by [the Dragons] of seven (7) promissory notes of even date herewith, for the total principal amount of [$79,934.55] payable to Leo Trial [and the other siblings] ... or order, payable as provided in said notes and containing other provisions in said Notes, have BARGAINED, GRANTED, SOLD AND CONVEYED and by these presents do BARGAIN, GRANT, SELL AND CONVEY unto the [Dragons] all that certain parcel or tract of land, lying and being situated in Karnes County, Texas, and more particularly described as follows : [Emphasis added.]
A tract, lot or parcel of land, lying and being situated in Karnes County, Texas containing 237 acres of land , of which 133 acres are out of the Issac Gray Survey and 104 acres are out of the Ramon Musquiz Four League Grant; the said 237 acres of land being particularly described ... as follows.... [Emphasis added.]
SAVE AND EXCEPT, HOWEVER, all of the Mineral Estate, including all executive rights and royalty for a period of fifteen (15) years from date. At the end of said fifteen (15) years this reservation will expire and all of the Mineral Estate will vest in [the Dragons], their heirs and assigns, regardless of whether there is production at that time. Intending hereby to reserve the Mineral Estate for fifteen (15) years from date only and said period will not be perpetuated by production.
TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said [Dragons], their heirs and assigns forever, and We do hereby bind ourselves, our heirs, executors and administrators to WARRANT AND FOREVER DEFEND all and singular the said premises unto the said [Dragons] , their heirs and assigns against any person whomsoever lawfully claiming or to claim the same, or any part thereof. [Emphasis added.]....
*166 The Dragons argue the 1992 Deed purports to convey 100% of the property-each grantor conveyed an undivided 1/7th interest-and, pursuant to the deed, all the grantors conveyed 100% of their 1/7th interest, and not merely a portion of their interest. The Trials, on the other hand, assert Leo owned only one-half of his 1/7th interest because he previously conveyed the other one-half to Ruth. Therefore, the Trials insist Leo conveyed to the Dragons only what he owned, which was his 1/14th interest in the property.
A "deed will pass whatever interest the grantor has in the land, unless it contains language showing the intention to grant a lesser estate." Combest v. Mustang Minerals, LLC , 502 S.W.3d 173, 179 (Tex. App.-San Antonio 2016, pet. denied) (internal citations omitted). Thus, a "warranty deed will pass all of the estate owned by the grantor at the time of the conveyance unless there are reservations or exceptions [that] reduce the estate conveyed." Id. (internal citations omitted). However, "a court will construe a deed to confer upon the grantee the greatest estate that the terms of the instrument allow." Id.
An "exception" is a "mere exclusion from a grant of some interest which may be vested in the grantor or outstanding in another." Angell v. Bailey , 225 S.W.3d 834, 840 (Tex. App.-El Paso 2007, no pet.) (quoting Fuentes v. Hirsch , 472 S.W.2d 288, 293 (Tex. Civ. App.-El Paso 1971, writ ref'd n.r.e.) ). "Property 'excepted' or 'reserved' under a deed is 'never included in the grant' and is 'something to be deducted from the thing granted, narrowing and limiting what would otherwise pass by the general words of the grant.' " Combest , 502 S.W.3d at 179. Therefore, "[r]eservations must be made by 'clear language,' and courts do not favor reservations by implication." Id. (citations omitted). "Exceptions must identify, with reasonable certainty, the property to be excepted from the larger conveyance." Id. (citations omitted). Accordingly, exceptions generally are strictly construed against the grantor. Id. at 180.
Here, with the exception of a reservation as to the mineral estate, the 1992 Deed does not contain any other exceptions to the conveyance of the entirety of the property. The language of the deed as a whole does not clearly and plainly disclose the intention of any grantor to narrow and limit "what would otherwise pass by the general words of the grant." Id. at 179. For example, there is no language stating Leo Trial conveyed "his interest" in the property, which might indicate he intended to convey only his 1/14th interest. Instead, Leo and his siblings conveyed "all that certain parcel or tract of land," with no qualifying language added. The "parcel or tract of land" is described as "containing 237 acres of land."
Because the 1992 Deed conveyed "all that certain parcel or tract of land," we conclude the deed purports to convey a 14/14th interest in the property. However, in 1983, Leo Trial conveyed one-half of his 1/7th interest to his wife; therefore, in the 1992 Deed, Leo purported to convey what he did not own-he conveyed a 1/7th interest when he actually owned only a 1/14th interest. Having concluded the 1992 Deed purported to convey 100% of the property, then the next question is whether Leo breached the warranty clause by conveying that which he did not own.
B. Did Leo Breach the Warranty Clause & Does Estoppel by Deed Apply?
The 1992 Deed contains a warranty clause that states:
TO HAVE AND TO HOLD the above described premises, together with all *167 and singular the rights and appurtenances thereto in anywise belonging unto the said [Dragons], their heirs and assigns forever, and We [the grantors] do hereby bind ourselves, our heirs, executors and administrators to WARRANT AND FOREVER DEFEND all and singular the said premises unto the said [Dragons] , their heirs and assigns against any person whomsoever lawfully claiming or to claim the same, or any part thereof. [Emphasis added.]....
As stated previously, the 1992 Deed conveyed "all that certain parcel or tract of land," which we have construed as purporting to convey a 14/14th interest in the land. "When the deed is so interpreted the warranty is breached at the very time of the execution and delivery of the deed, for the deed warrants the title to" "all that certain parcel or tract of land." Duhig v. Peavy-Moore Lumber Co. , 135 Tex. 503, 507, 144 S.W.2d 878, 880 (1940) ; see also Scarmardo v. Potter , 613 S.W.2d 756, 759 (Tex. Civ. App.-Houston [14th Dist.] 1981, writ ref'd n.r.e.) (applying Duhig , court concluded Potter breached his warranty at very time of execution and delivery of deed to Scarmardo because deed warranted title to surface estate and to an undivided seven-eighths interest in the minerals, and Potter purported to convey to Scarmardo an undivided seven-eighths interest at a time when he only owned one-half). Therefore, if Leo did not own a full 1/7th interest in the land, then he breached the warranty contained in the 1992 Deed "at the very time and execution of the deed" because he purported to convey what he did not own. Id. Accordingly, there is no question then that Leo breached his warranty.
The estoppel by deed doctrine is founded upon the theory that parties contract based upon the facts recited in the deed. XTO Energy Inc. v. Nikolai , 357 S.W.3d 47, 56 (Tex. App.-Fort Worth 2011, pet. denied) ; see also Greene v. White , 137 Tex. 361, 153 S.W.2d 575, 583 (1941) (estoppel by deed applies to grantors and grantees); Angell , 225 S.W.3d at 842 (same). The doctrine prohibits the assertion of title in contradiction or breach of the warranty. Duhig , 144 S.W.2d at 880 ; XTO Energy , 357 S.W.3d at 56 ("Estoppel by deed precludes parties from alleging title 'in derogation of the deed [or] deny[ing] the truth of any material fact asserted in it.' "). A deed "purporting to convey a fee simple or a lesser definite estate in land and containing covenants of general warranty of title or of ownership will operate to estop the grantor from asserting an after-acquired title or interest in the land, or the estate which the deed purports to convey, as against the grantee and those claiming under him." Duhig , 144 S.W.2d at 880. Because Leo breached the warranty contained in the 1992 Deed "at the very time and execution of the deed," he would have been estopped from asserting title to any interest in the property in contradiction to the warranty. The next question is whether the Trials as remainder beneficiaries of Leo's estate are also estopped from making a claim that is adverse or in contradiction of the warranty.
C. Are a Grantor's Heirs/Beneficiaries Also Estopped From Claiming an Interest Adverse to the Warranty?
In their motion for summary judgment, the Trials argued they are not "successors in interest" to Leo Trial with respect to the 1992 Deed. They contend that because their claim to an interest in the property arises from their mother, they are not bound by the warranty clause in the 1992 Deed. Estoppel by deed stands for the general proposition that a deed's recitals binds "both parties and privies;
*168 privies in blood, privies in estate, and privies in law." Freeman v. Stephens Prod. Co. , 171 S.W.3d 651, 654 (Tex. App.-Corpus Christi 2005, pet. denied) (internal citations omitted); see also XTO Energy , 357 S.W.3d at 56 ; Angell , 225 S.W.3d at 842.
In Duhig , Gilmer, the fee-simple owner of the surface and mineral rights of a tract of land, conveyed the property to Duhig, reserving a one-half undivided mineral interest. 144 S.W.2d at 878-79. Duhig then conveyed by warranty deed the property to the Miller-Link Lumber Co. (Miller-Link). In that conveyance, Duhig reserved a one-half undivided mineral interest, but did not mention the one-half undivided mineral interest previously reserved by Gilmer. The principle issue before the court was whether Duhig was the owner of the one-half interest he reserved, or whether his grantee, Miller-Link, owned the one-half interest. Miller-Link contended that the failure of Duhig to include the exception by Gilmer prevented Duhig from claiming the interest he reserved. Id. at 879-80. The court concluded Duhig reserved for himself a one-half interest in the minerals and this "covenant is not to be construed as affecting or impairing the title so reserved." Id. at 880. The court also concluded, however, that the covenant operated "as an estoppel denying to the grantor (Duhig) and those claiming under him the right to set up such title against the grantee and those who claim under it." Id. at 880-81. Therefore, Duhig breached his warranty and was estopped from relying on his deed to Miller-Link as reserving in himself a one-half interest because he failed to withhold from the operation of the conveyance the one-half undivided interest previously reserved by Gilmer.
In XTO Energy , the court of appeals concluded the Nikolais were estopped from denying a mineral reservation that was recited by deeds in their chain of title. XTO Energy , 357 S.W.3d at 59. The court concluded "the Nikolais [the grantee in a 1981 deed], who are in privity with E.M. Madewell (the grantee of the [1922] Speer Deed), Pippin [the grantee in a 1953 deed], and Brockie [the grantee in a 1971, and who claim title under the deeds involving those parties, are bound by the recitation of the mineral reservation in the [1922] Speer Deed and are estopped from denying it." Id. at 58.
In Angell , the court of appeals concluded the granddaughter of a grantee was estopped from denying the truth of recitals in a 1936 deed. The court held:
The [1936] E.D. Warner deed unambiguously recites that, within the southeastern-most forty acres of the land covered thereby, ten acres had previously been conveyed to Jack Ellison and two acres had been previously been conveyed to Bailey. Angell is a decedent of the grantee in the deed, privy to its language by her family relationship to both the grantors and the grantee. She is bound by the recitals, just as her grandfather was. There has been no argument that this deed is invalid in any way. The deed recites that the exceptions were made because the acres had already been transferred to the parties referenced, including Jack Ellison and Bailey. Angell is estopped to deny the truth of the recitals in the instrument and therefore cannot deny the Jack Ellison and Bailey interests. The trial court did not err by concluding that Angell was estopped to deny the existence of the Jack Ellison and Bailey interests.
Angell , 225 S.W.3d at 842.
As set forth in Duhig , XTO Energy , and Angell , estoppel by deed applies to grantors, grantees, privies in blood, privies in estate, and privies in law. Here, Leo conveyed a 1/7th interest in the 1992 Deed *169 rather than the 1/2 of the 1/7th interest he owned. Because Leo purported to convey more than he owned, he breached the warranty he granted in the 1992 Deed and would be estopped from asserting title to any interest in the property in contradiction to the warranty. The Trials are remainder beneficiaries of Leo's estate and trust, and, therefore, they are his privies in blood, privies in estate, and privies in law. As such, they also are bound by the recitals in the 1992 Deed. The Trials are therefore estopped from asserting title to any interests in contradiction to Leo's duty to defend the Dragons against all claims to "all that certain parcel or tract of land." Accordingly, the trial court erred in rendering summary judgment in favor of the Trials.
CONCLUSION
For the reasons stated above, we conclude the trial court erred by denying the Dragons' motion for summary judgment and by granting the Trials' motion for summary judgment. Because the application of estoppel by deed is dispositive, we (1) reverse the trial court's November 9, 2015 order denying the Dragons' motion for summary judgment, (2) reverse the trial court's November 9, 2015 judgment granting the Trials' traditional motion for summary judgment, (3) reverse the trial court's June 16, 2016 order granting the Trials' amended motion for partial summary judgment and no-evidence summary judgment, and (4) render judgment in favor of the Dragons.

Royalties were previously paid to the sellers of the property, including the Leo Trial Trust.

A March 8, 2012 Mineral Ownership & Lease Status Report contains a substantially similar comment.

In their second amended petition, in addition to the allegations contained in their original petition, the Dragons added other claims and a request for declaratory relief. The last live petition (the third) names the defendants as Joseph Russell Trial, individually and as (proposed) Administrator of the Estate of Anna Ruth Trial, Deceased, and Michael Leo Trial.