# IN THE SUPREME COURT OF TEXAS

════════════

No. 18-0203

════════════

JOSEPH RUSSELL TRIAL AND MICHAEL LEO TRIAL, PETITIONERS,

v.

JEROME DRAGON, JR. AND PATRICIA G. DRAGON, RESPONDENTS

════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

════════════════════════════════════

**Argued February 21, 2019**

JUSTICE GREEN delivered the opinion of the Court.

In this case, we examine whether the estoppel by deed doctrine applies to prevent the petitioners from asserting title to an interest they inherited from their mother, when their father previously purported to sell that interest to the respondents. We hold that neither the estoppel by deed doctrine nor our opinion in *Duhig v. Peavy-Moore Lumber Co.*, 144 S.W.2d 878 (Tex. 1940), applies in this case. Accordingly, we reverse the court of appeals' judgment and hold that the petitioners are entitled to retain the interest inherited from their mother. But we remand the case to the trial court to determine whether damages are appropriate for the respondents' breach of warranty claim.

## I. Background

Leo Trial and his six siblings each owned a 1/7 interest in certain real property situated in Karnes County, Texas, which totaled 237 acres.[1] In 1983, Leo gifted to his wife, Ruth, "one-half (1/2) of all of [his] right, title and interest in and to" the Karnes County property. As a result of that gift, Leo and Ruth then each owned a 1/14 interest in the Karnes County property, with Ruth's 1/14 being her separate property. The deed was recorded in Karnes County within days of execution.

In 1992, Leo and his still-living siblings purported to convey the entire Karnes County property to the Dragons. Leo and his siblings executed separate but identical deeds, each containing the following language: "WE, LEO TRIAL of Karnes County, Texas, [and other grantors] . . . do BARGAIN, GRANT, SELL AND CONVEY unto the [Dragons] all that certain parcel or tract of land, lying and being situate[d] in Karnes County, Texas . . . ."[2] The Dragons paid approximately $100,000 for the property, which was financed in part over a fifteen-year period. The Dragons did not obtain a title opinion or title insurance and were not represented by counsel. The deed contained a fifteen-year mineral reservation and a general warranty clause that provided:

> TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the [Dragons], their heirs and assigns forever, and We do hereby bind ourselves, our

---

[1] There were originally eight Trial siblings, including Leo, each owing an undivided 1/8 in the Karnes County property. But after one died, the remaining siblings each owned an undivided 1/7 interest in the property.

[2] For simplicity, we refer to the Trial siblings' deeds collectively as the 1992 deed, except when referencing Leo's deed specifically.

heirs, executors and administrators to WARRANT AND FOREVER DEFEND all and singular the said premises unto the [Dragons], their heirs and assigns against every person whomsoever lawfully claiming or to claim the same, or any part thereof.

The deed did not mention Ruth's 1/14 interest, there is no indication that the Dragons were actually aware of Ruth's interest, and Ruth was not a party to the 1992 sale.

Leo died in 1996, about four years after the sale to the Dragons. Under his will, his entire estate was devised to trust for the remainder of Ruth's life, and, upon her death, the corpus went to their two sons, Joseph and Michael. The will named Ruth as independent executrix of the estate and trustee of the trust. After Leo's death, Ruth continued to accept and endorse the Dragons' remaining payments from the 1992 sale and later endorsed the release of lien, signing on Leo's signature line as "Leo Trial by Ruth Trial." Ruth died in 2010, but her will was not probated. As a result, Ruth's 1/14 interest passed to the Trial sons through intestacy, giving each son a 1/28 interest in the Karnes County property.

In 2008, after the Trials' mineral reservation expired, the Dragons approached the oil and gas operator for a new division order, which would direct the operator to begin making the royalty payments to the Dragons in full. The operator did so until 2014 when a lease status report showed that Ruth owned a 1/14 interest "in her own right," that she had died intestate, and that she had two sons. Accordingly, a new division order was entered, directing the operator to make royalty payments to Joseph Trial and Michael Trial, the two sons, in a suspended account.

The Dragons filed suit against the Trial sons, asserting multiple causes of action including breach of warranty and estoppel by deed. The case was presented in competing

3

summary judgment motions, both traditional and no-evidence. The trial court denied the Dragons' motion and granted the Trials' motions, ruling in favor of the Trials on almost every claim at issue in the suit, including breach of warranty and estoppel by deed.[3] The Dragons appealed.

On appeal, the Dragons argued, among other things, that the trial court erred in denying their motion for summary judgment because the 1992 deed conveyed the entire 14/14 interest in the property, and estoppel by deed divested the Trials of any interest. The Trials countered that together they inherited the 1/14 interest from their mother, an independent source from the 1992 deed, and therefore estoppel by deed did not apply.

The court of appeals reversed the trial court's judgment and rendered judgment for the Dragons based on estoppel by deed and our decision in *Duhig*, 144 S.W.2d 878. *See* 568 S.W.3d 160, 167–69 (Tex. App.—San Antonio 2017, pet. granted) (mem. op.). The court of appeals relied on *Duhig* to hold that because Leo, grantor to the 1992 deed, breached the general warranty "at the very time and execution of the deed" by "purport[ing] to convey what he did not own," estoppel by deed would apply to estop Leo from claiming an interest that contradicts the general warranty. *Id.* at 167 (quoting *Duhig*, 144 S.W.2d at 880). Building on that, the court concluded that estoppel by deed applies to the Trial sons as remainder beneficiaries of Leo's estate, estopping them from claiming an interest that contradicts the general warranty because

_____

[3] The procedural history in the trial court is more complicated than summarized here. For purposes of this opinion, we address only the history relevant to the claims at issue in this Court.

4

"estoppel by deed applies to grantors, grantees, privies in blood, privies in estate, and privies in law." *Id.* at 168–69. Specifically, the court of appeals held:

> As set forth in *Duhig*, *XTO Energy*, and *Angell*, estoppel by deed applies to grantors, grantees, privies in blood, privies in estate, and privies in law. Here, Leo conveyed a 1/7th interest in the 1992 Deed rather than the 1/2 of the 1/7th interest he owned. Because Leo purported to convey more than he owned, he breached the warranty he granted in the 1992 Deed and would be estopped from asserting title to any interest in the property in contradiction to the warranty. The Trials are remainder beneficiaries of Leo's estate and trust, and, therefore, they are his privies in blood, privies in estate, and privies in law. As such, they also are bound by the recitals in the 1992 Deed. The Trials are therefore estopped from asserting title to any interests in contradiction to Leo's duty to defend the Dragons against all claims to "all that certain parcel or tract of land." Accordingly, the trial court erred in rendering summary judgment in favor of the Trials.

*Id.* (citing *Duhig*, 144 S.W.2d at 880–81; *XTO Energy Inc. v. Nikolai*, 357 S.W.3d 47, 58–59 (Tex. App.—Fort Worth 2011, pet. denied); *Angell v. Bailey*, 225 S.W.3d 834, 842 (Tex. App.—El Paso 2007, no pet.)).

The Trial sons filed a petition for review in this Court, arguing that the court of appeals misapplied *Duhig*, and as a result, erred by applying the doctrine of estoppel by deed. We granted the petition. 62 Tex. Sup. Ct. J. 320 (Jan. 18, 2019).

## II. Analysis

### A. Standard of Review

We review a grant of summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Because the parties presented the case through competing summary judgment motions, both traditional and no-evidence, and the trial court granted the Trials' motions while denying the Dragons', we review the summary

5

judgment evidence presented by both sides and render judgment that the trial court should have rendered. *Id.* (citing *Comm'rs Court of Titus Cty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997)).

## B. Beneficiaries of Both Estates

This case requires us to review the applicability of the estoppel by deed doctrine and this Court's opinion in *Duhig*, 144 S.W.2d 878. Under the court of appeals' opinion, the Trial sons are divested of an interest they inherited from their mother—her separate property—to satisfy their father's sale of the property in a separate grant. The Trial sons argue that the court of appeals erred by endorsing the proposition that a wife can be divested of her separate real property, despite never having signed a deed, to honor a title warranty made by her husband, merely because the wife's heirs are the same as the husband's heirs. Stated differently, the Trials assert that estoppel by deed does not apply because the Trials are not claiming an interest in the property under their father, Leo, the original grantor to the Dragons under the 1992 deed. They are instead contending that their interest in the property arises from their mother who did not sign the 1992 deed and, thus, could not be bound by that deed.[4]

---

[4] The Trial sons also contend that constructive notice bars the Dragons from asserting ownership in the 1/14 interest at issue, arguing that the Dragons cannot assert an interest contrary to that shown in the deed records. Indeed, when Leo Trial gifted half of his 1/7 interest to his wife, Ruth, in 1983, that conveyance was valid and the 1/14 interest became Ruth's separate property at the moment of execution. *See* TEX. FAM. CODE § 3.001(2) ("A spouse's separate property consists of . . . the property acquired by the spouse during marriage by gift, devise, or descent . . . ."). And when that conveyance was recorded, the entire world was put on constructive notice of Ruth's 1/14 interest in the property. *See* TEX. PROP. CODE § 13.002(1) ("An instrument that is properly recorded in the proper county is: (1) notice to all persons of the existence of the instrument . . . ."); *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981) ("A person is charged with constructive notice of the actual knowledge that could have been acquired by examining public records."). There is no question that Ruth's 1/14 interest was considered her separate property, or that the Dragons were on constructive notice of that interest by virtue of it being properly recorded in the Karnes County deed records. Had Ruth's interest not been recorded in the deed records, the Dragons likely would have been innocent purchasers for value, in which case they would hold superior title to Ruth's 1983 gift deed. *See Cooksey v. Sinder*, 682 S.W.2d 252, 253 (Tex. 1984) (per curiam) (observing that to be an innocent purchaser, the buyer must have (1) purchased the property in good faith, (2) paid value for the property, and (3) had no legal notice, actual or constructive, of the outstanding

6

The Dragons, on the other hand, contend that under Texas law a grantee is protected against an over-conveyance when the deed contains a general warranty because the grantor and his or her heirs are estopped from claiming an ownership interest until the grantee is made whole. *See Duhig*, 144 S.W.2d at 880–81. Here, according to the Dragons, Leo and his still-living siblings conveyed all of the Karnes County property, and because the deed contained a general warranty, Leo and his "heirs, executors and administrators" warranted to forever defend "all and singular the said premises unto the [Dragons], their heirs and assigns against every person whomsoever lawfully claiming or to claim the same, or any part thereof." The Dragons claim that under *Duhig* and its progeny, Leo breached the general warranty in the 1992 deed at the time of execution because he owned only half of what he purported to convey, and the Trial sons, as Leo's direct heirs, are bound by the deed's general warranty and are estopped from asserting title to any portion of the Karnes County property. The Dragons further rely on the after-acquired title doctrine to assert that once the Trial sons inherited the 1/14 interest from their mother, the doctrine was triggered and that interest vested immediately in the Dragons.

## C. Estoppel by Deed & *Duhig*

In the broadest sense, estoppel by deed stands for the proposition that all parties to a deed are bound by the recitals in it, which operate as an estoppel. *See generally Greene v. White*, 153 S.W.2d 575, 583–84 (Tex. 1941) (observing that "the recital of one deed in another binds the parties to the deed containing the recital, and those who claim under them, and may take the

---

interest). But because Leo purported to transfer Ruth's interest, which was recorded, we must determine whether the court of appeals correctly applied the doctrine of estoppel by deed and *Duhig* to divest the Trial sons of Ruth's interest, which they acquired when Ruth died intestate.

7

place of a deed and thus form a muniment of title"). Over the years, the doctrine of estoppel by deed developed in the courts of appeals to have a wide application that "all parties to a deed are bound by the recitals therein, which operate as an estoppel, working on the interest in the land if it be a deed of conveyance, and binding both parties and privies; privies in blood, privies in estate, and privies in law." *E.g.*, *Sauceda v. Kerlin*, 164 S.W.3d 892, 915 (Tex. App.—Corpus Christi–Edinburg 2005) (quoting *Wallace v. Pruitt*, 20 S.W. 728, 728–79 (Tex. App.—Houston 1892, no writ)), *rev'd*, 263 S.W.3d 920 (Tex. 2008). The phrase "privies in blood, privies in estate, and privies in law" stems from *Carver v. Jackson*, 29 U.S. (4 Pet.) 1 (1830), in which Justice Story announced the general rule of estoppel by deed that "a recital of one deed in another binds the parties and those who claim under them. Technically speaking, it operates as an estoppel, and binds parties and privies; privies in blood, privies in estate, and privies in law." *Id.* at 83. The doctrine, however, is not without limitations. *See id.* Estoppel by deed "does not bind mere strangers, or those who claim by title paramount the deed. It does not bind persons claiming by an adverse title, or persons claiming from the parties by title anterior to the date of the reciting deed." *Id.*

One of the most prominent displays of the estoppel by deed doctrine is this Court's decision in *Duhig*, which the court of appeals applied to the facts at issue here. *See* 568 S.W.3d at 167–69. The court of appeals also relied on two estoppel by deed cases from intermediate appellate courts, *XTO Energy*, 357 S.W.3d 47, and *Angell*, 225 S.W.3d 834, to divest the Trial sons, as remainder beneficiaries of Leo's will, of the 1/14 interest inherited from Ruth. *See* 568

8

S.W.3d at 168–69.  But, as explained below, neither *Duhig* nor the estoppel by deed doctrine on which it is based applies in this case.

We note at the outset that *Duhig* applies the doctrine of estoppel by deed to a very distinct fact pattern, and its holding is narrow and confined to those specific facts.  The grantor, W. J. Duhig, owned a tract of real property subject to a 1/2 mineral reservation from a previous owner.  *Duhig*, 144 S.W.2d at 878.  Duhig purported to convey all of that land and the mineral estate to a subsequent purchaser while attempting to reserve 1/2 of the minerals for himself.  *Id.* The reservation clause stated specifically that "it is expressly agreed and stipulated that the grantor [Duhig] herein retains an undivided one-half interest in and to all mineral rights or minerals of whatever description in the land."  *Id.* at 879.  But the warranty deed did not mention the prior owner's 1/2 reservation, nor did it indicate that Duhig did not own all of the minerals. *See id.*

This Court explained that, in that situation, the grantor breached his general warranty in the deed by appearing to convey more than he actually did.  *See id.* at 880 ("When the deed is so interpreted [that] the warranty is breached at the very time of the execution and delivery of the deed, . . . [t]he result is that the grantor has breached his warranty . . . .").  Had the Court stopped its analysis with that observation, then the holding would have rested exclusively on breach of warranty, with the remedy being self-correcting—that any reservation is rendered ineffective until the shortfall in the warranty is remedied, which would presumably be captured by damages.  But the Court went on to apply equitable principles because the grantor, Duhig, had and held "in

9

virtue of the deed containing the warranty the very interest, one-half of the minerals, required to

remedy the breach" at the very instance of execution and breach. *Id.* The Court held:

> We recognize the rule that the covenant of general warranty does not enlarge the
> title conveyed and does not determine the character of the title. The decision here
> made assumes, as has been stated, that Duhig by the deed reserved for himself a
> one-half interest in the minerals. The covenant is not construed as affecting or
> impairing the title so reserved. It operates as an estoppel denying to the grantor
> and those claiming under him the right to set up such title against the grantee and
> those who claim under it.

*Id.* at 880–81 (citations omitted). The Court also described the after-acquired title doctrine,

which is a form of estoppel by deed in its own right:

> It is a general rule, supported by many authorities, that a deed purporting to
> convey a fee simple or a lesser definite estate in land and containing covenants of
> general warranty of title or of ownership will operate to estop the grantor from
> asserting an after-acquired title or interest in the land, or the estate which the deed
> purports to convey, as against the grantee and those claiming under him.

*Id.* at 880 (citations omitted).

Although *Duhig* still has its place in our jurisprudence, we conclude that it does not apply

in this case. Importantly, while *Duhig* discussed the after-acquired title rule within the confines

of the broader estoppel theory, *Duhig* did not hold that any after-acquired title passed. *See id.*

Indeed, Duhig, at the very time of execution and breach, owned the exact mineral interest

required to remedy that breach and was thus subject to an instant transfer based on equitable

principles. *See id.* Accordingly, *Duhig* stands for the proposition that if a grantor reserves an

interest and breaches a general warranty at the very time of execution, then an immediate

passing of title is triggered to the grantee for that property that was described in the

reservation—in other words, if the grantor owns the exact interest to remedy the breach *at the time of execution* and equity otherwise demands it. *See id.*

The facts presented in this case differ significantly, distinguishing this case from *Duhig*. Leo did not own the interest required to remedy the breach at the time of 1992 deed's execution to the Dragons; Ruth did as her separate property. And the Trial sons did not inherit that interest until after Ruth's death many years later. Had Leo not transferred 1/14 to Ruth but held it in trust for his sons, so that the Trial sons would inherit the 1/14 interest directly from Leo, then perhaps *Duhig*'s application of the estoppel by deed doctrine would fare better for the Dragons.[5] But that is not the case, and we need decide only that *Duhig* does not apply to the facts before us here.

Furthermore, regarding the broader estoppel by deed doctrine on which *Duhig* is based, the Trials rightfully point out that they do not claim under the 1992 deed, even though they are, undoubtedly, Leo's privies. Rather, they claim an interest independent from that 1992 deed, by title predating the 1992 sale to the Dragons. Leo gifted a 1/14 interest to Ruth almost a decade before the 1992 sale to the Dragons, and that interest became her separate property, which the Trial sons inherited when she died. *See* TEX. FAM. CODE § 3.001(2); TEX. EST. CODE § 201.001(a), (b). As we have explained, estoppel by deed does not bind individuals who are not a party to the reciting deed, nor does it bind those who claim title independently from the subject deed in question.

---

[5] Or, for example, if Ruth had devised her 1/14 separate real property interest to Leo and her will had been probated, the Trial sons would have acquired title to that 1/14 interest from Leo. But here the Trial sons inherited their interest from Ruth through intestacy. We need not and do not decide whether, in other circumstances, *Duhig* might apply to estop the Trial sons from asserting their ownership interest in the property.

To further clarify this point, we address the court of appeals' reliance on *XTO Energy*, 357 S.W.3d 47, and *Angell*, 225 S.W.3d 834. The court of appeals cited these two appellate court decisions as support for its holding that the estoppel by deed doctrine operated to divest the Trial sons of the 1/14 interest they inherited from their mother. *See* 568 S.W.3d at 168–69. Neither decision applies in this case.

*XTO Energy* applied the doctrine of estoppel by deed to estop the Nikolais—the last grantees in a long and complicated chain of title—from denying a mineral reservation recited by other deeds further back in the title chain. *See* 357 S.W.3d at 55–59. Because the Nikolais were in privity with the prior grantees and "claim[ed] title under the deeds involving those parties," they were bound by the recitation of the mineral reservations and thus estopped from denying their existence. *Id.* at 58. *XTO Energy* has little relevance to this case—it applied the long-standing principle that grantees are bound by recitals in their chain of title—which does not apply here because the Trial sons derived their claimed 1/14 interest from a source separate and apart from the 1992 deed to the Dragons.

*Angell* is no more relevant. The issue there was whether the granddaughter of a grantee was estopped from denying the truth of recitals in a 1936 deed. *Angell*, 225 S.W.3d at 837–38. The grantors conveyed property to their son but excepted a small amount of acreage that had previously been conveyed. *Id.* at 837. After the grantors died, the grantee's granddaughter filed suit to remove a cloud on the property's title created by the previously conveyed interests. *Id.* at 838. The court held that the granddaughter was estopped from denying the existence of those interests because her grandfather's deed—to which she was a successor in

12

interest—"unambiguously" recited that "ten acres had previously been conveyed." *Id.* at 842. The *Angell* court further stated that "Angell is a [descendant] of the grantee in the deed, privy to its language by her family relationship to both the grantors and the grantee. She is bound by the recitals, just as her grandfather was." *Id.* The court of appeals in this case relied on *Angell* to reason that the Trial sons were privies to the 1992 deed simply because they were Leo's descendants and thus, by virtue of their relationship to their father, were estopped from asserting any interest in the Karnes County property. *See* 568 S.W.3d at 168 (quoting *Angell*, 225 S.W.3d at 842). But that fails to address the Trials' position that they claim an interest not under the 1992 deed, but from an independent source not a party to that 1992 sale—their mother. Thus, like *XTO Energy*, *Angell* applied long-standing legal principles that do not confront the issue in this case.

In addition, the Dragons support their estoppel by deed theory with the after-acquired title doctrine, urging it as a separate argument for obtaining their claim to the disputed 1/14 interest. The Dragons cite this Court's decision in *Houston First American Savings v. Musick*, 650 S.W.2d 764 (Tex. 1983), in which the Court explained that the doctrine generally applies "when one conveys land by warranty of title, or in such a manner as to be estopped to dispute the title of his grantee, a title subsequently acquired to that land will pass *eo instante* to his warrantee, binding both the warrantor and his heirs and subsequent purchasers from either." *Id.* at 770 (citation omitted). Using *Musick*, the Dragons assert that at the time the Trial sons inherited the disputed 1/14 interest, the after-acquired title rule was triggered and the interest

13

vested immediately in the Dragons to make them whole under the express terms of the 1992 deed.

We disagree. *Musick* dealt with a party claiming in the same capacity as the original grantor who made the warranty. *See id.* at 769–70. This case is different because the Trial sons are claiming their interest through Ruth, their mother, and the 1983 gift deed from which she derived her separate property interest. Stated differently, the sons' claim to the 1/14 interest has nothing to do with the 1992 sale deed to the Dragons, under which Leo purported to transfer the entire interest and retained nothing but a fifteen-year mineral reservation. As such, the after-acquired title doctrine, as well as this Court's decision in *Musick*, do not apply to bind the Trial sons to the 1992 deed.

In summary, on these facts the Trial sons could be divested of the 1/14 interest they inherited from their mother, as her separate property, only through estoppel by deed, to include the after-acquired title doctrine, or *Duhig*'s estoppel. However, as we have explained, Leo Trial and his still-living siblings executed a deed purporting to convey the entire 14/14 interest in the property, but, unlike *Duhig*, *Angell*, and *XTO Energy*, the Trial sons do not claim their interest under the deeds involving those parties. *See Duhig*, 144 S.W.2d at 880; *XTO Energy*, 357 S.W.3d at 58; *Angell*, 225 S.W.3d at 837–38. Therefore, neither *Duhig*'s estoppel holding nor the broader estoppel by deed doctrine applies in this case. And because the Trial sons do not assert an interest derived from Leo's grant in the 1992 deed, the after-acquired title doctrine likewise does not apply to divest the Trial sons of their interest and immediately vest the same in the Dragons. Having concluded that estoppel by deed and its related doctrines do not apply in

14

this case, any other general estoppel theory based on Leo, Ruth, and the Trial sons enjoying the benefits of the 1992 sale proceeds, or the subsequent mineral royalty income, or any other equitable consideration, does not affect title in this case, but would merely speak to the question of monetary damages.

### D. Breach of Warranty

Although the court of appeals misapplied *Duhig*, there can be no doubt that the court correctly observed that "Leo breached the warranty contained in the 1992 Deed 'at the very time and execution of the deed.'" 568 S.W.3d at 167 (quoting *Duhig*, 144 S.W.2d at 880). The deed contained express language conveying "all that certain parcel or tract of land, lying and being situate[d] in Karnes County, Texas"—property that Leo did not own and thus lacked authority to convey. We have held that a deed will transfer whatever interest the grantor has in the land, unless it contains language showing the intention to grant a lesser estate. *See Sharp v. Fowler*, 252 S.W.2d 153, 154 (Tex. 1952). And courts will construe a deed to confer upon the grantee the greatest estate that the terms of the instrument allow. *See Lott v. Lott*, 370 S.W.2d 463, 465 (Tex. 1963). Here, other than the exception of the fifteen-year mineral reservation, there is no qualifying language to indicate that Leo was conveying "his interest" or some lesser estate than a full fee simple, nor was there any language on the face of the deed to signify that the Dragons were taking the land subject to an outstanding interest. There is no question that Leo breached the general warranty at the time of execution, and a proper remedy for breach of warranty in the sale of property is monetary damages. *See Forrest v. Hanson*, 424 S.W.2d 899, 902–05

15

(Tex. 1968) (holding that damages, rather than estoppel, is the proper remedy when the grantor breached the warranty).

In *Forrest*, this Court overturned the appellate court's application of *Duhig* to replace the grantees' missing minerals to cure a breach of warranty. *See id.* at 903–05. After analyzing in depth the factual background, the Court observed that when the grantor conveyed a specific section of land while reserving all the minerals under a number of acres thereof, "his warranty was immediately breached as to the minerals in and under" another section of that land. *Id.* at 904. "These minerals having been previously severed, and [the grantor] owning no interest in the minerals under the [property], he owned no minerals under [that property] out of which his warranty could be fulfilled." *Id.* The Court went on to analyze *Duhig*'s applicability, as well as the after-acquired title doctrine, concluding that neither applied:

> The *Duhig* doctrine is a doctrine of estoppel and not one of replacement. The *Duhig* case applied the estoppel principle of the after-acquired title cases. The only difference is that in such cases the title was acquired after the conveyance rather than as in *Duhig* the title was reserved in Duhig's instrument of conveyance. This Court in *Clark v. Gauntt*, 161 S.W.2d 270, 272 (1942), said:
>
> > The estoppel in the after-acquired title cases arises from the assertion of ownership made by the grantor in the covenant of warranty, express or implied, or in other recitals in the deed. Such assertion is a representation that the grantor owns the land or the estate or interest to which it relates, and having thus represented the fact of ownership, the grantor is estopped to deny that fact.
>
> Thus, if a party attempts to claim an interest which he purported to convey, he is in effect denying a fact represented by his conveyance and either the *Duhig* doctrine or the doctrine of after-acquired title would work an estoppel. In the case at bar neither Pelham (nor his vendees, Jamison and Moore), Forrest, nor Stuart owned any interest in the minerals under the NE/4, although their deeds purported to convey certain mineral interests therein; therefore, there were no mineral interests in the NE/4 belonging to either of these grantors to which the

16

doctrine of estoppel could apply and remedy their breach of warranty as to minerals in and under the NE/4.

Pelham, Forrest, and Stuart would only be liable for money damages for breach of their warranty as to any mineral interest in the NE/4 which their deed purported to convey but which they did not own, i.e., the middle 80 acres of the NE/4. Under the facts of this case Hanson is relegated to his claim for money compensation for the breach of warranty because of title failure.

*Id.* at 904–05 (citations omitted).

The Dragons attempt to distinguish *Forrest* by claiming that this case is not one of replacement because Ruth's purported interest, and therefore the Trial sons' purported interest, derived directly from Leo. We disagree. Simply stated, Leo did not own the minerals he purported to convey; Ruth did. And although the argument can be made that the Trial sons later acquired title to the 1/14 interest required to remedy Leo's breach of warranty, we have already explained why the after-acquired title doctrine does not apply in this case. The Trial sons did not acquire ownership of the 1/14 interest through Leo and under these facts could never have owned it by virtue of their relationship to Leo. The only way the Trial sons could have acquired the disputed interest in the property was through their mother and her separate property.[6]

### E. Disposition

The trial court resolved the case on competing motions for summary judgment. As to breach of warranty, the Dragons argued in their motion for summary judgment that the Trial sons breached the general warranty by "assert[ing] ownership of 1/14 of the Mineral Estate, despite the clear terms of the 1992 Deed." The Dragons claimed that "all of the elements for

---

[6] This is not to say that a grantee such as the Dragons could recover only under a breach of warranty theory. We express no opinion as to whether such a grantee might prevail on causes of action such as unjust enrichment or money had and received, as such claims were not brought in the trial court and are not before us in this appeal.

breach of [warranty] are present and there are no questions of material fact," and therefore "the Dragons are entitled to summary judgment for breach of [warranty]." The Trials argued in their motion for summary judgment that because they claim title to the property under Ruth, and not under Leo, the elements of a breach of warranty claim cannot be satisfied. Among other arguments, the Trials contended that they are not proper parties for a breach of warranty suit and that the Dragons cannot prove that any breach by the Trial sons caused the Dragons' damages. The trial court granted the Trials' motion and denied the Dragons', in effect ruling that the Dragons' breach of warranty claim fails as a matter of law. The court of appeals reversed and rendered judgment for the Dragons, explaining that Leo breached the warranty, *Duhig* and the estoppel by deed doctrine applied and Leo would have been estopped from asserting an interest contrary to the warranty, and the Trial sons, as Leo's privies in blood, estate, and law, are likewise estopped from asserting such an interest. *See* 568 S.W.3d at 166–69. Thus, the court of appeals appears to have decided *liability* as to the Dragons' breach of warranty claim, but it did not decide *damages*, the remedy the Dragons sought for breach of warranty. Rather, the court of appeals erroneously awarded the Dragons title to the property.

It is undisputed that the 1992 deed is a valid and enforceable contract between Leo Trial and the Dragons. And it is undisputed that Leo purported to sell a 1/7 interest when he owned only a 1/14 interest. The 1992 deed's general warranty provision plainly stated: Leo Trial and the other grantors "do hereby bind ourselves, our heirs, executors and administrators to WARRANT AND FOREVER DEFEND" the Karnes County property to the Dragons, "their heirs and assigns against every person whomsoever lawfully claiming" an interest in this

18

property.  As Leo's direct heirs, the Trial sons are bound by the general warranty to warrant and forever defend the Dragons from adverse claims to the Karnes County property.  The question is whether the Trial sons are liable for damages when they fail to warrant and defend against their own adverse claim to the property—their claim deriving from the interest they inherited from Ruth's separate property—and if so, what the amount of those damages would be.[7]  Neither the trial court nor the court of appeals has considered this damages question.  Accordingly, we remand the case to the trial court for further proceedings to address this issue.[8]

### III.  Conclusion

Because the Trial sons claim their 1/14 interest in the subject property from their mother, an independent source predating the 1992 deed, we hold that neither estoppel by deed nor our decision in *Duhig*, 144 S.W.2d 878, applies to divest the Trials of that interest.  The court of appeals erroneously awarded the Dragons title to the property as a remedy for their breach of warranty claim, when a proper remedy would be monetary damages.  We reverse the court of

---

[7] The Trial sons also argue that the Dragons did not sue the sons in their correct capacity as representatives of Leo's estate for the breach of warranty claim.  Because the Dragons named the Trial sons individually in every pleading to the trial court, and the general warranty in the 1992 deed binds Leo Trial and his "heirs, executors and administrators," we must address the claim the Dragons brought—a breach of warranty claim against the Trial sons individually for not honoring the warranty as Leo's heirs—and not another claim the Dragons might have brought.

[8] Although we ordinarily do not remand a case for a trial on damages when liability has been contested in the trial or appellate courts, *see* TEX. R. APP. P. 61.2, a remand is appropriate here because the case was resolved on competing motions for summary judgment, the lower courts have never decided the damages claim for breach of warranty, and a court can grant summary judgment only as to liability when the issue of damages is disputed, *see* TEX. R. CIV. P. 166a(a).

appeals' judgment divesting the Trial sons of their interest, and we remand the case to the trial court to determine whether damages are appropriate.

_____
Paul W. Green,
Justice

OPINION DELIVERED:  June 21, 2019